**UNITED STATES of America**

v.

**Reginald T. REMBERT, Appellant.**

**No. 88–3040.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 7, 1988.

Decided Dec. 23, 1988.

Richard S. Stern (appointed by this Court) for appellant.

W. Mark Nebeker, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, and Helen M. Bollwerk, Asst. U.S. Attys., were on the brief, for appellee.

Before WALD, Chief Judge, STARR and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Reginald T. Rembert ("Rembert" or "appellant") appeals from his conviction under all counts of a six-count indictment, charging two counts each of kidnapping, 18 U.S.C. § 1201(a)(1) (1982); interstate transportation of a stolen vehicle, 18 U.S.C. §§ 2312 & 2 (1982); and armed robbery, D.C.Code §§ 22–2901, –3202 (1981). His sole assignment of error relates to the admission into evidence of photographs taken by a bank

surveillance camera. Rembert contends that there was not a sufficient evidentiary foundation for the admission of the photos. We disagree and affirm.

## I. BACKGROUND

Rembert's convictions arise from crime sprees occurring on July 7 and 26, 1987. On July 7, according to the testimony of victim witness Mary Simon, she drove to a Signet Bank in Falls Church, Virginia, at approximately 10:30 p.m. As she attempted to use her bank card in the automatic teller machine ("ATM"), a man armed with a knife reached into the open window of her car, grabbed her by the neck, and threatened to kill her if she did not give him her ATM code number. At trial she positively identified appellant as being this man. A second man, referred to in the record as "Washington," joined them at her car.[1] She gave the two men her ATM number. They used the number and her bank card to extract $150 from her account. The two men forced Simon to accompany them in her car, driven by appellant, to a park in Washington, D.C. They made multiple stops and robbed Simon of her jewelry before leaving her in her vehicle, still in Washington.

A second victim witness, Andrea McGee, testified that on Sunday, July 26, 1987, in the midafternoon, she drove her automobile to an ATM machine in Washington, D.C. After she discovered the machine was out of order, she accidentally drove her car into the wall of the bank, where it became stuck. Two men, one of whom she later identified at a line-up and in court as appellant, and a third man not further involved in the incident, assisted in freeing her vehicle. The men identified as appellant and his companion then told her that they had missed their bus while helping her, and asked her to drive them to a bus stop. However, once in the car and under way, one of them threatened her with a butcher's knife and told her to drive to Virginia.

The other man, identified as appellant, rifled through her purse. Once in Virginia, the assailants ordered her to stop at a bank, where appellant's companion took her bank card and demanded her code number in order to obtain money. With some difficulty, he extracted $10 from the machine. Appellant's companion then took over the driving, and the two forced her to accompany them to another bank. At that bank they spotted a male customer, later identified as John Lynn, attempting to use the ATM machine. Appellant jumped from the car with the knife and began stabbing Lynn. Appellant's companion demanded and obtained Lynn's wallet, keys, and card code. After unsuccessfully attempting to steal Lynn's car, the assailants fled the scene in McGee's car, appellant driving, and forced her to accompany them to a Seat Pleasant, Maryland, branch of Sovran Bank, where they unsuccessfully attempted to use Lynn's ATM card.[2] After taking her purse, they finally returned McGee to Washington, D.C., where they abandoned her and her vehicle near the point of her abduction.

In addition to positive eyewitness identifications of Rembert by the two women victims and Lynn, the prosecution offered at trial evidence that each had identified Rembert in line-ups and that Simon had identified appellant in a series of photographs taken by a closed-circuit surveillance video camera at the Seat Pleasant bank where the two assailants took McGee. These photographs were received into evidence.

The record also contains other evidence linking appellant to the incidents, including the recovery from Simon's car of a latent fingerprint identifiable with the known print of appellant, and a composite sketch made by police artists with the assistance of Simon shortly after her abduction.

## II. ANALYSIS

As noted above, appellant's sole assignment of error concerns the admission of

---

1. Rembert's co-defendant, Kenneth E. Washington, pleaded guilty before trial and is not a party to this appeal.

2. Lynn had supplied a false code, which later resulted in an ATM machine rejecting, and ultimately retaining the card.

the photographic evidence from the video recorder at the Sovran Bank in Seat Pleasant, Maryland. The sole authenticating witness for the photos was Katie Wohlfarth, a supervisor in the loss control division of the bank, who testified that she was in charge of investigating questioned activities through the ATM machines. She testified that the machine-maintained records at the Seat Pleasant branch showed an unusual pattern of use associated with John Lynn's ATM card on July 26, 1987, at approximately 8:00 p.m. The machine's records indicated that the card had been entered ten times on that occasion and was retained by the machine on the tenth attempt. She further testified that video cameras are maintained at each of the three ATM machines at the Seat Pleasant location. A video recorder taped the view from each camera in sequence, rotating to the next camera, taking a photograph every three seconds. This videotaping process imprints the date and time at which the pictures were made on the resultant photographs. She then identified a strip of pictures which was admitted into evidence over Rembert's objection. She further testified that she had viewed the original videotape and the resultant photographs and that the photographs were fair and accurate depictions of what was on the videotape. The imprinted date and times on the photographs ranged from 8:04:22 p.m. until 8:13:30 p.m. on July 26, 1987. On cross examination, she testified that she had no personal knowledge of the events that transpired at the Seat Pleasant location on that date, and could not say from her own knowledge whether the photographs fairly and accurately depicted the scene and events at that time and place or not.

■ Appellant argues that photographs are admitted under two theories of authentication, and that the foundation offered by the prosecution in the present case meets neither theory. He first presents the classic model of illustrative or "pictorial testimony" use of photographs as evidence. Under this theory, a sponsoring witness (whether or not he is the photographer) who has personal knowledge of the scene depicted testifies that the photograph fairly and accurately portrays that scene. *See, e.g., Simms v. Dixon*, 291 A.2d 184 (D.C. 1972); E. Cleary, *McCormick on Evidence* (3d ed.1984) at 671. Obviously this model was not followed in Rembert's trial.

■ Appellant next argues that the only other basis for the introduction of photographic evidence is the "silent witness" model, under which the admissibility of a photograph is based on the reliability of the process by which it is made. This model is most often associated with the introduction of x-rays, where obviously no witness has viewed the scene portrayed. *See McCormick on Evidence, supra*, at 672. Appellant persuasively contends that the foundational evidence of the witness Wohlfarth does not meet that description. Her testimony did not really speak to the reliability of the process. She testified rather as a custodian of the records without supplying evidence as to the type of camera used, its general reliability, the quality of its product, the purpose of its employment, the process by which it is focused, or the general reliability of the entire system.

Appellant is undoubtedly correct that the evidence in this case does not meet either of those two models. He is further correct that those models are adopted in the Federal Rules of Evidence under the Authentication and Identification heading of Rule 901. Fed.R.Evid. 901(b)(1) (testimony that a matter is what it is claimed to be); 901(b)(9) (evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result). But this does not close our inquiry. Rule 901 expressly prefaces the two subsections set forth above by the language that they function "[b]y way of illustration only, and not by way of limitation," thereby leaving room for the general application of Rule 901(a). That general provision states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

As we have already held in a case also dealing with photographic evidence, "[a]uthentication and identification are specialized aspects of relevancy that are necessary conditions precedent to admissibility." *United States v. Blackwell,* 694 F.2d 1325, 1330 (D.C.Cir.1982) (citations omitted). The *Blackwell* case involved a prosecution for unlawful possession of firearms. The photographs in question depicted the defendant holding a firearm, apparently the same as one of the guns seized at the time of his arrest. The prosecution had obtained the photographs as the result of a search of the same room in which the firearms were found. No witness could testify as to when the photographs were made, where they were made, by what process, or whether they fairly and accurately depicted any particular scene on any particular date. The detective who conducted the search did testify that the details of the pictured weapon and the background interior were similar to the details of the weapon and room in question. We applied the same authentication and identification analysis as we would have with reference to the contents of any documentary evidence. That is, we required only that "the proponent of documentary evidence make a showing sufficient to permit a reasonable juror to find that the evidence is what its proponent claims." 694 F.2d at 1330 (citation omitted). We further held that under Rule 901, "[t]he sufficiency of a showing of a document's authenticity rests within the sound discretion of the trial judge," and that "[t]he trial court's determination regarding admissibility will not be overturned absent a clear abuse of discretion." *Id.* (citing, *inter alia, Jackson v. United States,* 395 F.2d 615, 619 (D.C.Cir.1968), and *United States v. Smith,* 490 F.2d 789, 794 (D.C.Cir.1974) (per curiam)).

These same principles apply to the photographic evidence in the instant case. Appellant correctly states the two traditional bases for the admission of the photographic evidence, but the uses of photography have not stood still and neither should the law. Nor has the law on the use of photographic evidence remained unaffected by the changes in society. For example, in *United States v. Stearns,* 550 F.2d 1167 (9th Cir.1977), Judge (now Justice) Kennedy wrote for the Ninth Circuit in a case in which the trial court had admitted certain photographs of a boat taken on the open seas. The defendants in that case were charged with stealing a boat named the *Sea Wind.* As part of a factually involved trial, the defendants contended that they had taken *Sea Wind* only to protect the vessel and at a time when their own vessel, the *Iola,* was disabled. Details within the photograph showed the rigging of the *Sea Wind* in the foreground (as if the photograph were taken from that vessel) and the *Iola* under full sail in the background. Other details in companion photographs provided circumstantial evidence of the date of the taking of the photographs as being after the time of the alleged disability of the *Iola.* In upholding the trial court's admission of the evidence, Judge Kennedy wrote: "Even if direct testimony as to foundation matters is absent ... the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." *Id.* at 1171.

Other courts, both federal and state, have likewise modernized their standards for admissibility of photographic evidence. In *United States v. Taylor,* 530 F.2d 639 (5th Cir.1976), for example, the trial court had admitted into evidence in a bank robbery trial contact prints made from a film taken by the bank camera after the victim bank employees had been locked in a vault. The bank camera was in the business area of the bank so that none of the witnesses could testify as to the accuracy of the scene depicted at the time of the taking of the prints. The only foundational evidence was introduced by government witnesses not present at the time of the robbery, who testified as to the manner in which the film was installed in the camera, how the camera was activated, the removal of the film immediately after the robbery, the chain of possession, and the method of development. The Fifth Circuit held that admis-

sion of that evidence on that foundation was within the discretion of the district court and that the district court did not abuse its discretion. *Id.* at 641–42. *See also People v. Bowley,* 59 Cal.2d 855, 859, 31 Cal.Rptr. 471, 474, 382 P.2d 591, 594 (1963) (holding that photographs may be admissible as probative evidence in themselves, rather than being solely illustrative of a witness's testimony, upon proper foundation).

Cases expanding the foundation appropriate to make photographic evidence admissible within the discretion of the trial court are becoming legion. *See, e.g., State v. Henderson,* 100 N.M. 260, 669 P.2d 736 (1983) (admitting photographs by an ATM camera on a bank officer's testimony as to origin and developing procedures); *Fisher v. State,* 7 Ark.App. 1, 643 S.W.2d 571 (1982) (upholding admissibility of videotape from store surveillance camera on testimony similar to that of the present case).

■ Consistent with our decision in *Blackwell* and the teachings of our sister circuits and the courts of the several states, we conclude that the contents of photographic evidence to be admitted into evidence need not be merely illustrative, but can be admitted as evidence independent of the testimony of any witness as to the events depicted, upon a foundation sufficient to meet the requirements of Federal Rule of Evidence 901(a). In this case the circumstantial evidence provided by the victim witnesses as to the occurrences at the ATM machines, together with the testimony of Wohlfarth as to the loading of the cameras and the security of the film, coupled with the internal indicia of date, place, and event depicted in the evidence itself provide ample support for the District Court's exercise of its discretion. Just as the Ninth Circuit held that the contents alone provided sufficient circumstantial evidence for the authentication of the photographs in *Stearns,* so do the contents of the photos in the instant case supply any further need for authentication that the contact prints from the ATM machine may require on the present record.[3]

■ Appellant further contends that we should require a heightened standard of authentication in a criminal prosecution where identification of the defendant is at issue. He offers no support for this proposition, nor are we aware of any. The Federal Rules of Evidence govern proceedings in the courts of the United States without regard to their civil or criminal nature, *see* Fed.R. Evid. 101, as do the principles of case law set forth above, each of which is drawn from a criminal prosecution. The Supreme Court made clear in *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed. 2d 618 (1972), that the heightened burden of proof in criminal cases, that is proof beyond a reasonable doubt, applies to the establishment of the facts underlying the conviction, not to the admissibility of specific pieces of evidence offered to prove these facts. In *Lego,* the Court was asked to hold that a confession should be ruled inadmissible unless its voluntariness was proved beyond a reasonable doubt rather than by a preponderance of the evidence. The Court held that a reasonable doubt standard was not offended "because the admissibility of a confession is determined by a less stringent standard." *Id.* at 487, 92 S.Ct. at 625. That opinion, of course, dealt with one of the most sensitive of constitutional protections of criminal defendants, the Fifth Amendment's protection against self-incrimination. If the protection of that right does not require a heightened standard for the admissibility of evidence, how much less so does the admissibility of mere photographic evidence.

### III. Conclusion

Before expressing our conclusion in this case, we would be remiss if we did not acknowledge the candor and ethical propriety of the conduct of the court-appointed

---

**3.** Of course photographic evidence, even where it meets the specialized relevancy requirements of the authentication rule, must still meet the general relevancy requirements of Rules 401, 403, and 404. *See Blackwell, supra,* 694 F.2d at 1332 and n. 8. There is no contention in the present case that such requirements were violated by the evidence in question.

counsel in this cause. While advancing a novel theory, he has at all times carefully advised the Court of all relevant authority, both supporting and opposing his point. We expressly commend this practice. Nonetheless, the role of photography in technology and society at large is a changing one, and the courts must change with it. For the reasons set forth above, we conclude that our precedent in *Blackwell* and the reasoning of the other authorities collected above persuasively show that the evidence herein was properly admitted. The judgment of the District Court is without error and is therefore

AFFIRMED.