68 P.3d 407

STATE of Arizona, Appellee,

v.

Leroy D. CROPPER, Appellant.

No. CR–00–0544–AP.

Supreme Court of Arizona,
En Banc.

May 5, 2003.

See also 204 Ariz. 534, 65 P.3d 915.

Janet Napolitano, Former Attorney General, Terry Goddard, Attorney General by Kent

E. Cattani, Chief Counsel, Capital Litigation Section, and Jack Roberts, Assistant Attorney General and J.D. Nielsen, Assistant Attorney General, Phoenix, Attorneys for the State of Arizona.

Thomas A. Gorman and David I. Goldberg, Flagstaff, Attorneys for Leroy D. Cropper.

## OPINION

McGREGOR, Vice Chief Justice.

¶ 1 Leroy D. Cropper appeals from his convictions and death sentence entered on November 3, 2000. The State charged Cropper with first degree murder, conspiracy to commit first degree murder and three counts of promoting prison contraband in connection with the March 7, 1997 murder of Arizona Department of Corrections (ADOC) Officer Brent Lumley.[1] At the time of the offenses, Cropper was an ADOC inmate housed at the Perryville State Prison. Cropper pled guilty to all counts on May 4, 1999.[2] We have jurisdiction under Article VI, Section 5.3 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) section 13–4031 (2001).

## I.

¶ 2 We view the facts in the light most favorable to sustaining the verdict. *State v. Gallegos*, 178 Ariz. 1, 9, 870 P.2d 1097, 1105 (1994). On March 7, 1997, ADOC corrections officers at the Perryville State Prison in Goodyear, Arizona, discovered that some mops were missing from the Building 26 supply room. Officers Brent Lumley and Deborah Landsperger began searching for the missing mops in the nearby cells. They found no mops in the first cell searched, number 257, occupied by inmates Eugene Long and Bruce Howell. The officers moved on to the adjacent cell, number 258, which held inmates Cropper and Lloyd Elkins. While searching cell 258, Officers Lumley and Landsperger uncovered various contra-

band items, including a knife, tattooing equipment and a possible "hit" list. While the officers conducted the search, Cropper repeatedly approached and entered the cell, yelling at the officers and complaining of the search. The search obviously distressed Cropper, who believed the officers disrespected him and his property, and he became enraged because the searchers damaged a photograph of his mother. After Officers Lumley and Landsperger finished their search, they placed Cropper and Elkins on "lockdown" status in their cell, whereby their cell door was locked from the master control panel in the control room and the two inmates were unable to leave.

¶ 3 Through his cell door and a common vent between cells 257 and 258, Cropper spoke to several fellow inmates about his plan to kill Officer Lumley. Inmates Eugene Long and Joshua Brice agreed to help and retrieved an eight-inch steel carving knife buried in one of the Building 26 yards. Using two fly-swatters attached to one another, Long passed Cropper the knife through the vent between the two cells. The inmates in cell 257 then passed a right-handed glove through the vent to Cropper. Cropper removed a lace from one of his shoes and wrapped it around the knife handle to provide a better grip.

¶ 4 Cropper needed to find a way out of his cell. An inmate is able to leave a locked cell if a fellow inmate "spins the lock" to his cell door. This lock picking procedure, performed manually on the cell door lock from outside the cell, bypasses the control room's electronic lock command. Howell and another inmate, Arthur Zamie, successfully opened the door, and then looked for Officers Lumley and Landsperger. Howell and Long returned to Cropper's cell and told him that Lumley was in the control room, with the door unlocked.

---

1. The State also charged two other ADOC inmates who are not involved in this appeal.

2. The trial court granted the State's motion amending the indictment to replace the conspiracy count with a count of dangerous or deadly assault by a prisoner.

¶5 Cropper left his cell, walked down the hall and entered the control room. Cropper snuck up behind Officer Lumley and thrust the knife into his neck, partially pulled it out, then pushed it in a second time from another direction. By the time Cropper finished, Lumley suffered a total of six stab wounds. Cropper left the control room, leaving the knife protruding from his victim's neck.

¶6 Cropper ran back to his cell from the control room and found the cell door locked. He tried to enter another locked cell and eventually reached cell 257, where he found the door unlocked. As he entered, he told Howell, who was inside cell 257, "I got him."

¶7 Cropper's clothes were covered with blood. He removed his sweatshirt and undershirt and threw them into Howell's trash can. He tore off a name tag sewn on the collar of his shirt and flushed it down Howell's toilet.

¶8 Cropper returned to his cell after an unidentified inmate spun the cell door lock. Cropper's cellmate Elkins helped him wipe away the blood on his body. Cropper also soaked his pants and shoes in a mixture of water and laundry detergent to clean off the blood.

¶9 Meanwhile, Howell gathered the bloody clothes from his trash can and placed them inside a garbage bag, which he threw onto the Building 26 roof. Howell then wiped blood from the door knob to Cropper's cell with one of his socks. DNA tests showed that the blood recovered from Cropper's shoes, underwear and the glove was consistent with Lumley's blood.

¶10 On April 14, 1997, a grand jury indicted Cropper for first degree murder and other counts related to Officer Lumley's death. On May 4, 1999, Cropper pled guilty to all counts. The State filed its list of aggravating factors on May 13, 1999, indicating it would seek to prove the murder was committed (1) in an especially cruel, heinous or depraved manner, A.R.S. section 13–703.F.6, and (2) while the defendant was an ADOC inmate, A.R.S. section 13–703.F.7.

¶11 On December 12, 1999, while in the custody of the Maricopa County Sheriff's Office awaiting the Lumley murder sentencing proceeding, Cropper stabbed a fellow inmate, Antoin Jones, for which he faced an aggravated assault charge. During a telephone conference on December 15, 1999, the State asked the trial court to continue the upcoming capital aggravation/mitigation hearing pending the outcome of the aggravated assault case. The prosecutor advised the court and Cropper's attorney that the State would seek to prove a prior serious conviction aggravating circumstance under A.R.S. section 13–703.F.2 if Cropper was convicted of aggravated assault. On April 11, 2000, at the opening of the initial capital aggravation/mitigation hearing, the prosecutor again told the court, Cropper and his attorney that the State would use an aggravated assault conviction as an aggravating circumstance. On April 18, 2000, the court granted the State's motion to continue the hearing pending the outcome of Cropper's aggravated assault case. Cropper pled guilty to one count of aggravated assault for the Jones stabbing on June 22, 2000.

¶12 Following the close of the aggravation/mitigation hearing on October 13, 2000, the trial court found that the State had established three aggravating circumstances. In its special verdict dated November 3, 2000, the court found (1) Cropper had been convicted of a prior serious offense, A.R.S. section 13–703.F.2; (2) Cropper committed the murder in an especially cruel manner, A.R.S. section 13–703.F.6; and (3) Cropper committed the crime while in the custody of the ADOC, A.R.S. section 13–703.F.7.[3] The court also found two mitigating circumstances: (1) Cropper had a strong relationship with certain members of his family and (2) he felt and expressed remorse for Officer Lumley's death. After considering the aggravating and mitigating circumstances, the court concluded that the mitigating circumstances were not "sufficiently substantial to call for leniency." A.R.S. § 13–703.E. The

---

3. Cropper conceded the facts underlying this aggravating circumstance.

court sentenced Cropper to death. This appeal followed.

## II.

### A.

¶ 13 Cropper argues that the prosecutor failed to give notice of the State's intent to prove the third aggravating circumstance, prior serious conviction, within the time period prescribed by Arizona Rule of Criminal Procedure 15.1.g(2).[4] As a result, Cropper argues, he unknowingly prejudiced himself by entering the guilty plea in the aggravated assault case.

■ ¶ 14 The State admittedly did not file notice of the prior serious conviction aggravating circumstance within ten days of Cropper's first degree murder conviction, as required by superseded Rule 15.1.g(2).[5] The State, however, could not give notice of the prior serious conviction aggravating circumstance until Cropper committed the precipitating crime. We therefore consider whether the State's delay prejudiced Cropper's position.

¶ 15 When the state fails to comply with a deadline, our primary concern involves prejudice suffered by the defendant. We have considered an analogous situation in several cases involving Arizona Rule of Criminal Procedure 15.1.g(1), which establishes the state's procedural obligations for noticing its intent

to seek the death penalty. The state cannot seek the death penalty if its failure to comply with Rule 15's time requirement results in prejudice to the defendant. In *Barrs v. Wilkinson*, we held that precluding the death penalty "may be appropriate where ... the state's violation is particularly egregious or the defendant will clearly suffer harm." 186 Ariz. 514, 516, 924 P.2d 1033, 1035 (1996); *accord Holmberg v. De Leon*, 189 Ariz. 109, 111, 938 P.2d 1110, 1112 (1997) (holding prosecution's notice to seek the death penalty filed eighteen days before trial prejudiced defendant who did not have actual notice). In *Barrs*, the State failed to provide written notice of its intent to seek the death penalty until almost three months after the Rule 15.1.g(1) deadline passed. *Id.* at 515, 924 P.2d at 1034. We held that the State's failure prejudiced the defendant because he had planned and structured his defense for months believing the State would seek a prison sentence. *Id.* at 517, 924 P.2d at 1036. Unlike Barrs, Cropper does not allege that the delay prejudiced his ability to contest the F.2 aggravating circumstance.

■ ¶ 16 Cropper also argues that the State failed to comply with the rule because it did not give him written notice. The purpose of Rule 15.1.g(2)'s requirement of written notice is to ensure that a defendant receives timely, actual notice of the state's penalty phase objectives. In this case, Cropper did receive actual notice that the

---

**4.** This rule has been amended twice since Cropper's trial. The version then in effect provided:

> **Rule 15.1. Disclosure by state**
> . . . .
> **g. Additional disclosure in a capital case.**
> . . . .
> (2) The prosecutor, no later than 10 days after a verdict of first degree murder in a case in which the prosecutor is seeking the death penalty, shall provide to the defendant the following:
> (a) A list of the aggravating factors which the state intends to prove at the aggravation/mitigation hearing.

Ariz. R.Crim. P. 15.1.g(2)(a) (2000).
The rule now requires the prosecutor to notice aggravating circumstances when she notices the state's intent to seek the death penalty. Ariz. R.Crim. P. 15.1.g(2). The death penalty must be

noticed "no later than 60 days after the arraignment." *Id.* 15.1.g(1).

**5.** The state can use a prior serious offense conviction as a prior conviction aggravating circumstance if *the conviction* occurs *before* the sentencing hearing in the capital case, even though the defendant committed the crime and was convicted after the murder occurred. *State v. Rogovich*, 188 Ariz. 38, 44, 932 P.2d 794, 800 (1997) (holding F.2 aggravating circumstance applies "to convictions entered prior to the sentencing hearing, regardless of the order in which the underlying crimes occurred or the convictions entered"); *State v. McKinney*, 185 Ariz. 567, 580–81, 917 P.2d 1214, 1227–28 (1996) (holding F.2 aggravating circumstance applied where defendant was simultaneously convicted of first and second degree murder because the convictions occurred before the first degree murder sentencing).

State would argue the F.2 aggravator just three days after the precipitating crime occurred and four months before the aggravation/mitigation hearing began. He does not attest that, under those facts, he faced any real danger of prejudice. *Cf. State v. Lee,* 185 Ariz. 549, 556, 917 P.2d 692, 699 (1996) (holding not prejudicial the state's inadvertent failure to provide defendant notice of intent to seek the death penalty under Rule 15.1.g(1) until eighty-seven days after such notice was required because defendant had actual notice of the prosecutor's intent to seek the death penalty).

¶ 17 Because Cropper had actual, although oral, notice of the prosecutor's intent to use the aggravated assault conviction as a prior serious offense aggravating circumstance and the delay caused him no prejudice, the State adequately noticed the prior serious conviction aggravating circumstance.[6]

### B.

¶ 18 Cropper also claims that his guilty plea in the aggravated assault case should be overturned because he did not enter the plea knowingly, intelligently and voluntarily. He would not have pled guilty, he argues, had he known that the State intended to offer his conviction as an aggravating circumstance in his upcoming capital sentencing hearing. The State asserts that whether Cropper entered a valid plea to the aggravated assault case is an issue not properly before the court. We agree with the State.

▇ ¶ 19 The aggravated assault plea was entered at a proceeding unrelated to the first degree murder trial. Arizona law requires this court to hear direct appeals in criminal cases when the defendant is sentenced to death. A.R.S. § 13–703.01 (2001), *renumbered at* A.R.S. §§ 13–703.04 to 13–703.05 (Supp.2002). We can review only those issues directly arising from the capital pro-

ceeding. *See State v. Shattuck,* 140 Ariz. 582, 584, 684 P.2d 154, 156 (1984).

¶ 20 Moreover, because Cropper pled guilty to aggravated assault, he waived any right to direct appeal in that action. *State v. Smith,* 184 Ariz. 456, 458, 910 P.2d 1, 3 (1996). If he wishes to challenge the validity of his plea, he must do so through the post-conviction relief procedures provided by Rule 32 of the Arizona Rules of Criminal Procedure.

### C.

¶ 21 Cropper finally argues that the trial judge should have recused himself from the capital sentencing phase because he presided over the aggravated assault proceedings. We reject this argument because Cropper has not presented any evidence of bias or prejudice.

▇ ¶ 22 A party challenging a trial judge's impartiality must overcome a strong presumption that trial judges are "free of bias and prejudice." *State v. Medina,* 193 Ariz. 504, 510 ¶ 11, 975 P.2d 94, 100 (1999) (quoting *State v. Rossi,* 154 Ariz. 245, 247, 741 P.2d 1223, 1225 (1987)). Overcoming this burden means proving "a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants." *In re Guardianship of Styer,* 24 Ariz.App. 148, 151, 536 P.2d 717, 720 (1975). The moving party must "set forth a specific basis for the claim of partiality and prove by a preponderance of the evidence that the judge is biased or prejudiced." *Medina,* 193 Ariz. at 510 ¶ 11, 975 P.2d at 100.

¶ 23 In *State v. Medina,* the defendant argued his state and federal due process rights were violated because the trial judge did not recuse himself from his capital trial. *Id.* at 509 ¶ 10, 975 P.2d at 99. The same judge had presided over a prior trial in which the defendant was convicted of aggravated assault and robbery. *Id.* Those convictions served as the basis for an F.2 aggravating circumstance. *Id.* We rejected the defendant's argument because he neither filed a Rule 10.1 motion nor presented tangible evi-

6. For obvious reasons, the state should make every effort to comply with all notice require-

ments, including the requirement that notice be written.

dence of bias.[7] *Id.* at 510 ¶¶ 12–13, 975 P.2d at 100. We held that a judge's capacity for fairness and impartiality should not be questioned for "mere speculation, suspicion, apprehension, or imagination." *Id.* at 510 ¶ 12, 975 P.2d at 100 (quoting *Rossi,* 154 Ariz. at 248, 741 P.2d at 1226).

 ¶ 24 Cropper has presented no facts that meet the test set out in *Medina* and never filed a Rule 10.1 motion. Accordingly, we reject the argument that the trial judge was biased and prejudiced.

## III.

¶ 25 In *Ring v. Arizona* (*Ring II*), the United States Supreme Court held unconstitutional that portion of A.R.S. section 13–703 that allowed judges to find facts that led to the aggravation of a defendant's sentence. 536 U.S. 584, 608, 122 S.Ct. 2428, 2443, 153 L.Ed.2d 556 (2002). The Court declared that "[c]apital defendants, no less than non-capital defendants ... are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 589, 122 S.Ct. at 2432. The Court reversed our decision in *State v. Ring* (*Ring I*) and remanded for further proceedings consistent with its decision. *Ring II,* 536 U.S. at 589–90, 122 S.Ct. at 2443 (reversing *Ring I,* 200 Ariz. 267, 25 P.3d 1139 (2001)). Following the *Ring II* decision, we consolidated all death penalty cases in which this Court had not yet issued a direct appeal mandate, including Cropper's, and ruled that we would order supplemental briefing on sentencing issues affected by *Ring II* after issuance of our decision in *State v. Ring,* 204 Ariz. 534, 65 P.3d 915 (2003) (*Ring III*). Because *Ring III* has been issued, by separate order, we direct the parties to submit supplemental briefing in accordance with

that opinion. We will address sentencing issues in a supplemental opinion.

## IV.

¶ 26 For the foregoing reasons, we affirm Cropper's convictions.

CONCURRING: CHARLES E. JONES, Chief Justice, REBECCA WHITE BERCH, Justice, MICHAEL D. RYAN, Justice, and WILLIAM E. DRUKE, Judge (Retired).[*]

---

**7.** The Arizona Rules of Criminal Procedure allow a defendant to file a motion requesting a new judge for cause. Ariz. R.Crim. P. 10.1.

\* The Honorable Andrew D. Hurwitz recused himself; pursuant to Article VI, Section 3 of the

Arizona Constitution, the Honorable William E. Druke, (Retired) Judge of the Court of Appeals, Division Two, was designated to sit in his stead.