IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JUNE 18 2008

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀2 CA-CR 2007-0218
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Appellee,⠀)⠀⠀⠀DEPARTMENT A
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀O P I N I O N
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
TIMOTHY CHRISTOPHER HAIGHT-⠀)
GYURO,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Appellant.⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20062034

Honorable Barbara Sattler, Judge Pro Tempore

AFFIRMED

Terry Goddard, Arizona Attorney General
⠀By Randall M. Howe and Jonathan Bass⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Tucson
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
⠀By Stephan J. McCaffery⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Tucson
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Attorneys for Appellant

B R A M M E R, Judge.

**¶1**⠀⠀⠀⠀⠀⠀Appellant Timothy Haight-Gyuro appeals his convictions for theft by control

and/or by misrepresentation, theft of a credit card, forgery, and theft by controlling stolen

property. He argues the trial court abused its discretion by admitting into evidence a copy of a videotape recorded by a retail store's surveillance cameras. Finding no error, we affirm.

**Factual and Procedural Background**

¶2 On appeal, we view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the jury's verdicts. *State v. Cropper*, 205 Ariz. 181, ¶ 2, 68 P.3d 407, 408 (2003). On May 23, 2006, Haight-Gyuro used a stolen credit card to purchase various items at a retail store. A store surveillance camera recorded him purchasing merchandise at a cash register and signing the credit card slip.

¶3 The following day, Oro Valley Police Department Detective Doug Hamblin received information that Tucson Police Department officers had found items taken in the same burglary in which the credit card had been stolen. After arriving at the location where the property had been found, Hamblin spoke with Haight-Gyuro's wife, S., who showed him property "piled up outside" a car S.'s mother had rented for S. and Haight-Gyuro to use. The property included items taken during the burglary and items purchased from the retail store with the stolen credit card. Haight-Gyuro's wallet and identification were found in the car. Haight-Gyuro was arrested that day and charged with theft by control, trafficking in stolen property, forgery, theft of a credit card, and theft by control and/or misrepresentation. The trafficking count was subsequently dismissed.

¶4 Before trial, Haight-Gyuro moved to suppress a copy of the surveillance videotape, arguing admission of the video recording into evidence violated Rules 704 and

2

403, Ariz. R. Evid., because a computer cursor appeared on the copy that pointed to a specific individual "alleged to be" Haight-Gyuro in the video recording. The trial court denied the motion. During the suppression hearing, however, Haight-Gyuro additionally had argued the state would be unable to provide a proper foundation for the video recording because the retail store's loss-prevention investigator, B., had not recalled placing the computer cursor on the copy or giving the recording to Hamblin.[1] The court sua sponte raised the additional question whether the state could demonstrate the video recording "accurately reflects the situation at the time it's purported to reflect." After argument, the court took the matter under advisement.

¶5            On the first day of trial,[2] the court granted Haight-Gyuro's motion in limine requesting that the state initially establish foundation for the video recording outside the jury's presence. B. then testified, and the court again took the motion under advisement. After further argument, the court ruled that the state had provided "sufficient foundation [for the video recording]" and that it would "allow the recording in." The court admitted it into evidence, over Haight-Gyuro's objection, after B. testified in the jury's presence on the second day of trial.

---

[1]B. had apparently stated in pretrial interviews that he did not recall making the recording or giving it to Hamblin. He testified at trial, however, that he had made the recording and gave it to Hamblin.

[2]Trial was held before a different judge than the one who had presided over the suppression hearing.

3

¶6 After a three-day trial, the jury convicted Haight-Gyuro of the remaining counts. The trial court sentenced Haight-Gyuro to concurrent, presumptive prison terms, the longest of which was 6.5 years. This appeal followed.

**Discussion**

¶7 We review the trial court's ruling on the admissibility of evidence for a clear abuse of discretion. *State v. King*, 213 Ariz. 632, ¶ 7, 146 P.3d 1274, 1277 (App. 2006). Haight-Gyuro asserts the state "failed to present the trial court with testimony that the video recordings were accurate depictions of the events recorded," relying on *Lohmeier v. Hammer*, 214 Ariz. 57, 148 P.3d 101 (App. 2006), and *State v. Paul*, 146 Ariz. 86, 703 P.2d 1235 (App. 1985). *Paul* states that "the requirements for admission of a videorecording should be the same as for a photo, that it fairly and accurately depicts that which it purports to show." 146 Ariz. at 88, 703 P.2d at 1237. In *Lohmeier*, Division One of this court stated, "To be admissible, a photograph must be a reasonably faithful representation of the object depicted and aid the jury in understanding the testimony or evaluating the issues." 214 Ariz. 57, ¶ 8, 148 P.3d at 105. And, although "the individual who took the photographs need not be the person who verifies them at trial, and the verifying witness is not required to have been present when the photographs were taken," the verifying witness must "attest that the photographs accurately portray the scene or object depicted." *Id.*

¶8 It is undisputed that the procedure described in *Lohmeier* was not used here. There was no testimony by a witness who saw the recorded transaction occur and, therefore,

no witness who could testify from firsthand knowledge that the video recording accurately portrayed that event. The state contends, however, that the recording was properly authenticated pursuant to Rule 901(b)(9), Ariz. R. Evid. Rule 901(a) states that, "as a condition precedent to admissibility," evidence must be authenticated or identified by evidence "sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(b) describes several methods by which this requirement may be met, and subsection (b)(9) states that authentication may be accomplished by presenting "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result." For evidence to be properly authenticated, the trial court "must be satisfied that the record contains sufficient evidence to support a jury finding that the offered evidence is what its proponent claims it to be. The [court] does not determine whether the evidence is authentic, but only whether evidence exists from which the jury could reasonably conclude that it is authentic." *State v. Lavers*, 168 Ariz. 376, 386, 814 P.2d 333, 343 (1991).

¶9 We first address Haight-Gyuro's argument that, even if the video recording were properly authenticated under Rule 901(b)(9), there must be an additional showing the recording is accurate, on the theory that "authentication . . . differs from accuracy." Haight-Gyuro misapprehends both Rule 901 and *Lohmeier*. Although *Lohmeier* does not explicitly discuss Rule 901, its discussion of the admissibility of photographic evidence does nothing more than explain the authentication method described in Rule 901(b)(1), which allows

5

authentication by "[t]estimony that a matter is what it is claimed to be." For photographic or video evidence, the authenticating evidence frequently takes the form of witness testimony that the photograph or video accurately portrays whatever it purportedly depicts. That is, authentication is achieved by evidence establishing the photograph or video is what its proponent claims—an accurate depiction of a particular person, place, object, or event.

¶10        Thus, in these circumstances, accuracy is more appropriately regarded as a component of authentication. *See, e.g., United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988) (authentication under Rule 901(b)(1), Fed. R. Evid., requires testimony by person "who has personal knowledge of the scene depicted" that "photograph fairly and accurately portrays that scene"); *Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir. 1985) (citing Rule 901(b)(1), Fed. R. Evid., for proposition that "witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question").[3] As we will explain, if a party seeks to admit into evidence a video recording it asserts is an accurate recording of a particular event, to authenticate that video recording under Rule 901(a), it must provide some evidence from which a jury could conclude the recording in fact accurately depicts that event.

---

[3]Other than minor textual differences not relevant here, the federal rule is identical to ours. *See State v. Johnson*, 132 Ariz. 5, 8, 643 P.2d 708, 711 (App. 1981) (because Arizona evidence rules adopted from federal, "in the absence of Arizona precedent as a guide to interpretation of our rules, we will look to the federal courts which have interpreted the Federal Rules of Evidence").

¶11    We now turn to the state's argument the video recording was properly authenticated under Rule 901(b)(9). The authentication of evidence under that rule is also known as the "silent witness" theory of authentication.[4] *See* 2 John W. Strong et al., *McCormick on Evidence*, § 214, at 15 (5th ed. 1999). Under this theory, "photographic evidence may draw its verification, not from any witness who has actually viewed the scene portrayed on film, but from other evidence which supports the reliability of the photographic product." *Id.* at 15-16. Although Arizona has not explicitly adopted this method of authentication, it is accepted, in one form or another, "in virtually all jurisdictions." *Id.* at 16.

¶12    Jurisdictions differ, however, in how they have articulated authentication requirements under the silent witness theory. For example, Alabama has adopted a seven-part standard for authentication that includes: (1) showing that the system used "was capable of recording what a witness would have seen or heard had a witness been present at the scene or event recorded"; (2) showing that the operator was competent; (3) "establish[ing] . . . the authenticity and correctness of the resulting recording"; (4) showing no alterations had been made; (5) showing the manner by which the "recording . . . was preserved"; (6) "identif[ying]

---

[4]This term is used because courts draw a distinction between automated recordings used as substantive evidence and those used as demonstrative evidence. *See Bergner v. State*, 397 N.E.2d 1012, 1015 (Ind. Ct. App. 1979). When such a recording is used as substantive evidence, "there is no need for a witness to testify a photograph accurately represents what he or she observed; the photograph 'speaks for itself.'" *Id.*, *quoting* 3 J. Wigmore, *Evidence*, § 790, at 220 (Chadbourn rev. 1970). Authentication under Rule 901(b)(1), in contrast, is often referred to as the "'pictorial testimony theory.'" *Id.* Of course, the recording must be supported by sufficient evidence to permit a jury to conclude it is accurate.

7

. . . the speakers, or persons pictured"; and (7) in criminal cases, showing any statements made were voluntary. *Ex Parte Fuller*, 620 So. 2d 675, 678 (Ala. 1993); *see also Calhoun v. State*, 932 So. 2d 923, 954 (Ala. Crim. App. 2005). The Florida Court of Appeals similarly affirmed a trial court's decision to admit videotape evidence under the silent witness theory after considering five factors: evidence of the time and date, presence or absence of evidence of tampering, the operating condition and reliability of the system, operating and testing procedures, and the identification of participants depicted in the recording. *See Wagner v. State*, 707 So. 2d 827, 831 (Fla. Dist. Ct. App. 1998).

¶13　　　Other courts, however, have adopted a less rigid approach. Indiana, for example, requires a "'strong showing of the [recording's] competency and authenticity,'" based on the facts and circumstances of the case. *Kindred v. State*, 524 N.E.2d 279, 298 (Ind. 1988), *quoting Bergner v. State*, 397 N.E.2d 1012, 1017 (Ind. Ct. App. 1979) (emphasis removed). The Nebraska Supreme Court stated in *State v. Anglemyer*, 691 N.W.2d 153, 161-62 (Neb. 2005), that:

> The general rule . . . is that photographic evidence is admissible when it is shown that it is a correct reproduction of what it purports to depict. This is often proved by the testimony of the one who took the photograph. However, this is not necessary, and it is well settled that the showing may be made by any evidence that bears on whether the photographic evidence correctly depicts what it purports to represent.

¶14　　　We agree with those courts that have declined to adopt a rigid, formulaic approach to the silent witness theory of authentication. The illustrations listed in Rule 901(b)

are merely nonexclusive "examples" and do not foreclose any other method of authentication that would meet the requirement of Rule 901(a). The only question, then, is whether there is "sufficient evidence to support a jury finding that the offered evidence is what its proponent claims it to be." *Lavers*, 168 Ariz. at 386, 814 P.2d at 343. We conclude a flexible approach is appropriate, allowing a trial court to consider the unique facts and circumstances in each case—and the purpose for which the evidence is being offered—in deciding whether the evidence has been properly authenticated. *See Bergner*, 397 N.E.2d at 1017 (declining to "lay down extensive, absolute foundation requirements" because "[e]very photograph [or other recording], the context in which it was taken, and its use at trial will be different in some respect"). Here, the primary purpose of showing the video recording to the jury was, of course, to permit it to identify Haight-Gyuro as the man who had purchased the items and signed the credit card slip. Thus, to comply with Rule 901(a), there must have been sufficient evidence to allow the jury to conclude the video recording depicted, with reasonable accuracy, the transaction in which the stolen credit card was used.[5]

_____

[5]Haight-Gyuro argues the trial court erred by not considering whether the video recording accurately reflected the credit card transaction. But it is clear from the court's discussion of the issue that it recognized accuracy, in these circumstances, is a component of authenticity. That the court did not specifically find the video recording to be sufficiently accurate is inconsequential. *Cf. Horton v. Mitchell*, 200 Ariz. 523, ¶ 13, 29 P.3d 870, 873 (App. 2001) (reviewing court assumes trial court found facts necessary to support ruling). In any event, we may affirm for any reason supported by the record. *See State v. King*, 213 Ariz. 632, ¶ 8, 146 P.3d 1274, 1277 (App. 2006).

¶15 B. testified that his job responsibilities included "[h]ooking up" and "maintaining" the store's surveillance system, a closed-circuit television system with "[a]pproximately 150 cameras inside and outside the store." He stated that "[m]ostly every single register has a camera over it" and that the cameras run twenty-four hours a day. He also testified that he had previously obtained similar copies of video recordings for law enforcement officers and that he could use a "dollar amount or time stamp or something that matches a credit card number" to find a specific transaction. The transaction would contain a date, time, and register number, by which he could locate the videotape "that correlates to the transaction." B. further stated the times listed on the receipt were accurate "within 10 minutes."

¶16 In addition, B. testified he had followed that procedure to determine which camera had recorded the transaction here and had copied the recording to a video disc that he then gave to Hamblin. He described the items purchased with the stolen credit card, including a television, a digital video disc player, a comforter, "several pillows," and a "12-inch bike." Both the credit card slip from that transaction and the transaction record were admitted without objection into evidence.

¶17 Viewed as a whole, this testimony and evidence were sufficient for the jury to conclude that the video recording accurately depicted the transaction in which the stolen credit card had been used. *See Lavers*, 168 Ariz. at 386, 814 P.2d at 343. Haight-Gyuro contends, however, that this evidence is insufficient to ensure accuracy because no evidence

10

"address[ed] the type of image the equipment would produce." He asserts a properly-working "camera lense [sic] may cause[] images to appear closer or larger than they would appear to the naked eye" or "capture colors that are more or less true to how they would appear to the naked eye."[6] A video recording or photograph, however, need not be perfectly accurate—it need merely be a "reasonably faithful representation." *Lohmeier*, 214 Ariz. 57, ¶ 8, 148 P.3d at 105; *see also Consol. Rail Corp. v. Thomas*, 463 N.E.2d 315, 319 (Ind. Ct. App. 1984) ("[A] photograph will be admissible so long as the discrepancies between it and its subject are not materially misleading either because they are minor or because the witness explains them 'in such a way that the jury would not be misled.'"), *quoting Gill v. State*, 368 N.E.2d 1159, 1162 (Ind. 1977).

¶18        As we noted above, the state's primary purpose in presenting the video recording to the jury was to permit identification of Haight-Gyuro as the man who had used the stolen credit card. Because the video recording was from a camera located above the register and therefore did not show the individual's face, the state asked the jury to compare the images to a photograph taken of Haight-Gyuro on the day of his arrest—authenticated in the more traditional manner under Rule 901(b)(1) and *Lohmeier*. In that photograph,

---

[6]Haight-Gyuro also asserts the video recording is inaccurate because it is "so grainy as to make familiar objects unrecognizable." As we state below, however, many of the objects retrieved from Haight-Gyuro's car were identifiable in the recording, and a jury could properly conclude the recording was an accurate depiction. In any event, the relative quality of a video recording does not necessarily make it inaccurate—it is ultimately for the jury to decide whether it can identify the objects and persons the recording depicts.

Haight-Gyuro is wearing a red, short-sleeved shirt with light-colored trim at the ends of the sleeves and around the neck, with a small, light-colored insignia on the chest. This clothing appears strikingly similar to the clothing worn by the person in the video recording. Thus, Haight-Gyuro's concerns about accuracy, particularly about how the camera might display colors, are reasonable. If the video recording had not shown the colors of that clothing accurately, it might have misled the jury into making an incorrect identification.

¶19 Any remaining concern about the recording's accuracy, however, dissipates when the video recording is compared to photographs of the items taken from Haight-Gyuro's car. The television set, bicycle, and several other items depicted in those photographs and purchased with the stolen credit card were readily identifiable on the video recording. The colors of those items closely matched the colors in the photographs, which were authenticated by Hamblin's testimony that he recognized the items. Given this comparison, there was sufficient evidence to support the trial court's conclusion that the recording was sufficiently accurate. *See Lohmeier*, 214 Ariz. 57, ¶ 8, 148 P.3d at 105; *Consol. Rail Corp.*, 463 N.E.2d at 319; *see also United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir. 1977) (recognizing that, "[e]ven if direct testimony as to foundation matters is absent, however, the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence"). Accordingly,

the trial court did not abuse its discretion by admitting the video recording into evidence under Rule 901.

## Disposition

¶20         We affirm Haight-Gyuro's convictions and sentences.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

_____
JOSEPH W. HOWARD, Presiding Judge

_____
JOHN PELANDER, Chief Judge