NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Grafton
No. 2012-817

THE STATE OF NEW HAMPSHIRE

v.

STEPHEN STANGLE

Argued: January 16, 2014
Opinion Issued: June 20, 2014

Joseph A. Foster, attorney general (Stephen D. Fuller, senior assistant attorney general, on the brief and orally), for the State.

Stephanie Hausman, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

BASSETT, J. After a jury trial in Superior Court (Bornstein, J.), the defendant, Stephen Stangle, was convicted on one count of theft by deception. RSA 637:4 (2007). On appeal, the defendant argues that the trial court erred in admitting a surveillance video without proper authentication. We affirm.

The following facts are drawn from the record or are otherwise undisputed. In January 2012, while shopping in a store in Woodsville, the defendant placed a vacuum cleaner in his shopping cart, passed through an unattended register line without paying, and proceeded to the customer service

area to "return" the vacuum cleaner. Although the defendant lacked a receipt for the vacuum cleaner, a store employee accepted the exchange, recorded the number of the defendant's state-issued identification, and provided the defendant with a gift card for the value of the vacuum cleaner. The video surveillance system in the store recorded the defendant's actions.

Approximately one week later, an asset protection manager at the store viewed the surveillance video looking for any suspicious activity related to non-receipt returns. By "backtracking" through images from various surveillance cameras located throughout the store, the manager traced the defendant's movements from when he entered the store until he completed the exchange. After viewing the images, the manager downloaded a copy of the surveillance video onto her computer and transferred it to a compact disc (CD). She provided the CD to the police, together with the paperwork regarding the return.

A police officer subsequently matched the state-issued identification number recorded during the exchange to the defendant's driver's license number. The officer then contacted the defendant, who, after initially asserting that he had purchased the vacuum cleaner, later acknowledged that "he returned it for the money." The defendant was indicted on one count of theft by deception.

At trial, the State sought to introduce the surveillance video, authenticating it through the manager's testimony. The defendant objected to the admission of the video, arguing that the State failed to lay a proper foundation. The trial court disagreed, and admitted the video into evidence. The court concluded that the State had satisfied the requirements of New Hampshire Rule of Evidence 901(a), finding that the authentication requirement for the surveillance video had been satisfied by evidence sufficient to "allow a reasonable juror to find that the video is what the State claims it is." After a one-day jury trial, the defendant was convicted of theft by deception.

On appeal, the defendant argues that the trial court "erred in admitting the surveillance video where no witness testified that it accurately depicted the events at issue." The State disagrees and argues that the manager's testimony sufficiently authenticated the video. We agree with the State.

The decision to admit or exclude evidence is within the discretion of the trial court. State v. Furgal, 164 N.H. 430, 438 (2012). In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. Id. To show an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id.

The authentication requirement for the admission of evidence is set out in Rule 901(a), which provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "The bar for authentication of evidence is not particularly high." State v. Ruggiero, 163 N.H. 129, 136 (2011) (quotation omitted). "The proof necessary to connect an evidentiary exhibit to a defendant may be made by circumstantial evidence." Id. (quotation omitted). "The proponent need not rule out all possibilities inconsistent with authenticity, or . . . prove beyond any doubt that the evidence is what it purports to be." Id. (quotation omitted). Instead, "[t]he contested evidence, if otherwise relevant, should be admitted once a prima facie case has been made on the issue of authentication." State v. Reid, 135 N.H. 376, 383 (1992) (quotation and brackets omitted). "Once the evidence is admitted, the rest is up to the jury." Ruggiero, 163 N.H. at 136 (quotation omitted).

Although Rule 901(a) requires the proponent to present evidence of authenticity, the rule does not establish formal requirements as to the nature or quantum of proof. See State v. Caswell, 146 N.H. 243, 248 (2001) (discussing admissibility of radar results); State v. Lee, 134 N.H. 392, 395-96 (1991) (discussing admissibility of infrared spectrophotometer test results). Rule 901(b), however, provides a non-exhaustive list of examples of authentication or identification methods that conform with the requirements of Rule 901(a), including:

> (1) Testimony of witness with knowledge.—Testimony that a matter is what it is claimed to be.
>
> . . . .
>
> (9) Process or system.—Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

The defendant argues that the manager's testimony was insufficient to authenticate the video because she "was not involved in establishing or maintaining" the surveillance cameras or the storage systems, and, therefore, could "offer[ ] no testimony that the cameras 'produced an accurate result.'" The defendant also asserts that the State offered insufficient evidence to establish the reliability of the surveillance video's "creation and handling" because it "was stored at an undisclosed location, and accessed by an undisclosed number of people" for approximately one week before the manager viewed the video and provided it to the police. The defendant contends that the State could have offered additional evidence to authenticate the video, such as testimony from the employees involved in the transaction or an employee with

3

"knowledge about the storage of surveillance footage." The defendant also argues that in order to admit the video the State was required to call the witnesses to the return transaction.

We have not previously addressed the foundational requirements for admitting videos into evidence under Rule 901(a). See State v. Leroux, 133 N.H. 781, 785 (1990) (recognizing that proponent of video in criminal case must "lay a proper foundation showing that [it] accurately portrays the event in question"). "When presented with authentication challenges to the admissibility of video tapes or other recordings, courts have typically admitted such evidence on one of two grounds." People v. Tuncap, No. CRA12-032, 2014 WL 235471, *6 (Guam Jan. 16, 2014) (considering admissibility of surveillance video under Guam Rule of Evidence 901(a), which requires for authentication "evidence sufficient to support a finding that the matter in question is what its proponent claims"). "First, courts admit such evidence when it is introduced to illustrate the testimony of a witness who observed the same scene viewed by the recording equipment." Id. "Second, where there is no first-hand witness, courts have adopted the 'silent witness' theory to admit video recordings." Id. "The 'silent witness' theory allows for the introduction of the recording as primary, substantive evidence of the events depicted." Id. "Under this theory, a witness need not testify to the accuracy of the image depicted in the photographic or videotape evidence if the accuracy of the process that produced the evidence is established with an adequate foundation." People v. Taylor, 956 N.E.2d 431, 438 (Ill. 2011). "In such a case, the evidence is received as a so-called silent witness or as a witness which speaks for itself." Id. (quotations omitted); see also 3 J. Wigmore, Evidence § 790, at 219-20 (Chadbourn rev. 1970); 2 McCormick on Evidence § 215, at 23-24; § 216, at 28-29 (Kenneth S. Broun ed., 6th ed. 2006). The State argues that the trial court properly admitted the surveillance video under the "silent witness" theory. We agree.

"Virtually all jurisdictions allow the introduction of recordings pursuant to 'silent witness' authentication, but jurisdictions differ on what evidentiary showing is required to satisfy the 'silent witness' standard." Tuncap, 2014 WL 235471, at *7 (citation omitted). The approaches fall into two general categories. Id. Some jurisdictions adopt a flexible, less formulaic approach focusing on the facts of each case. Id.; see, e.g., United States v. Rembert, 863 F.2d 1023, 1028 (D.C. Cir. 1988) (determining that photographic evidence "can be admitted as evidence independent of the testimony of any witness as to the events depicted, upon a foundation sufficient to meet the requirements of Federal Rule of Evidence 901(a)"); State v. Haight-Gyuro, 186 P.3d 33, 37 (Ariz. Ct. App. 2008) (adopting flexible approach, "allowing a trial court to consider the unique facts and circumstances in each case"); State v. Anglemyer, 691 N.W.2d 153, 161-62 (Neb. 2005) (noting that photographic evidence may be authenticated "by any evidence that bears on whether [it] correctly depicts

4

what it purports to represent"); cf. Dept. of Safety v. Cole, 672 A.2d 1115, 1122 (Md. 1996) (declining to adopt "rigid, fixed foundational requirements" and noting "that a foundation is adequate, at least for an administrative hearing, if there are sufficient indicia of reliability so that the trier of fact can reasonably infer that the subject matter is what its proponent claims." (quotation omitted)).

Other jurisdictions adopt a multi-factor test for determining the admissibility of photographs or videos. Tuncap, 2014 WL 235471, at *7. Some of the factors those jurisdictions consider are: "(1) how the recording system operates, (2) the system's working condition and pattern of maintenance, (3) who operates the system, has access to it, and maintains its archive[s] . . . (4) the quality of the recording, and (5) the means by which the recording was copied to the format viewed at trial." Id.; see also United States v. Oslund, 453 F.3d 1048, 1054 (8th Cir. 2006) (identifying seven nonexclusive factors for determining admissibility of tape-recorded conversations); Ex parte Fuller, 620 So. 2d 675, 678 (Ala. 1993) (requiring a seven-factor analysis); State v. Cook, 721 S.E.2d 741, 746 (N.C. Ct. App. 2012) (identifying "three significant areas of inquiry" for determining admissibility of videotape). However, even those jurisdictions that have adopted "a multi-factor analysis tend to acknowledge that the facts of each case may differ." Tuncap, 2014 WL 235471, at *7. They "neither require every factor be met nor rule out taking other circumstances into account in particular cases." Id.

Because we have previously acknowledged that whether a proponent has satisfied the requirements of Rule 901(a) is a determination within the discretion of the trial court, see Caswell, 146 N.H. at 248, "[w]e agree with those courts that have declined to adopt a rigid, formulaic approach to the silent witness theory of authentication." Haight-Gyuro, 186 P.3d at 36. We conclude that it is not "wise to establish specific foundational requirements for the admissibility of photographic [or video] evidence under the 'silent witness' theory, since the context in which the . . . evidence was obtained and its intended use at trial will be different in virtually every case." Fisher v. State, 643 S.W.2d 571, 575 (Ark. Ct. App. 1982). "It is enough to say, that adequate foundational facts must be presented to the trial court, so that the trial court can determine that the trier of fact can reasonably infer that the subject matter is what its proponent claims." Id. This allows the trial court "to consider the unique facts and circumstances in each case — and the purpose for which the evidence is being offered — in deciding whether the evidence has been properly authenticated." Haight-Gyuro, 186 P.3d at 37.

Here, at trial, the State identified the defendant by using the number on the state-issued identification provided to the store employee, and the defendant's acknowledgement to the police officer that "he did do this," and that "he returned [the vacuum cleaner] for the money." The primary purpose of

5

showing the video to the jury, therefore, was not to identify the defendant, but rather to permit the jury to observe his actions leading up to the return of the vacuum cleaner. Thus, in order to comply with the requirements of Rule 901(a), the State was required to present evidence sufficient to demonstrate that the surveillance video depicted the defendant's activities in the store, including the return of the vacuum cleaner. See id.

We find Thierry v. State, 288 S.W.3d 80, 89-90 (Tex. App. 2009), instructive in our evaluation of the trial court's exercise of discretion in admitting the video. In a trial for fraudulent use or possession of identifying information, the court in Thierry admitted a surveillance video that depicted the defendant using identifying information to open a credit account. Thierry, 288 S.W.3d at 83-84. The prosecutor introduced the video through a store employee who authenticated it with testimony about the intricacies of the store's recording and computer systems and details about how he linked "the receipts to the time and date that the account was opened, to the transactions in question, . . . and finally to the video camera that recorded the transactions." Id. at 89. He also described his process for viewing, storing, and copying the video, and he "testified that no alterations or deletions were made to the videotape." Id. at 89-90. The court concluded that "[t]his testimony [wa]s sufficient to enable a reasonable juror to conclude that the videotape was what the State claimed it was." Id. at 90.

Here, as in Thierry, the State authenticated the video through the testimony of the asset protection manager regarding the surveillance system and how she linked the store records to the defendant's transaction and to the cameras recording the defendant's movements. See id. at 89-90. The manager testified at length about the location and number of cameras in the store, their maintenance and operation, and the storage system for video files. She testified regarding her observations as she viewed the videos, including the date and time displayed on the video, and she demonstrated — on the computer in the courtroom — her process for viewing the video files. She testified that she downloaded the video files to her computer, copied the files to a CD, and provided that CD to the police department. Further, she verified that the CD offered into evidence was the same one given to the police department because she recognized her handwriting on it. She also confirmed that the video played for the court was the same video that she had copied onto the CD.

"Any concerns that the defendant had regarding the surveillance procedures, and the method of storing and reproducing the video material, were properly the subject of cross-examination and affected the weight, not the admissibility," of the video. Com. v. Leneski, 846 N.E.2d 1195, 1199 (Mass. App. Ct. 2006) (quotation omitted). The defendant, in fact, had the opportunity on cross-examination to explore potential problems with the surveillance

6

system and the possibility that the video files could have been altered, as well as to highlight that the manager did not personally install or maintain the surveillance cameras.

Viewed as a whole, the manager's testimony was sufficient for the trial court to "fairly conclude" that the matter in question was what the State claimed it to be. See Reid, 135 N.H. at 384 (concluding that, although there was no direct evidence of who removed defendant's sneakers, adequate foundation existed to admit them into evidence from officer testimony describing standard booking procedure); Leneski, 846 N.E.2d at 1199 (finding sufficient authentication of CD containing surveillance video through testimony "as to the procedure . . . used in the surveillance process, the copying process, and to the contents of the CD"). Contrary to the defendant's arguments, in order to authenticate the video, the State was not required to call the employees who were involved in the transaction, nor to present evidence of the defendant's appearance on the day of the incident. See Rembert, 863 F.2d at 1028 (upholding decision to admit photographs taken by surveillance camera authenticated by circumstantial evidence about occurrences at bank and by testimony "as to the loading of the cameras and the security of the film," and "internal indicia of date, place, and event depicted"). Accordingly, we conclude that the trial court sustainably exercised its discretion when it ruled that the video was properly authenticated, and that the CD could be played for the jury and admitted into evidence.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.