STATE OF NEBRASKA, APPELLEE, V.
NORMA FERRIS, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V.
DANIEL FERRIS, APPELLANT.

326 N.W.2d 185

Filed November 12, 1982.  Nos. 82-005, 82-006.

Barlow, Johnson, DeMars & Flodman, for appellants.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

WHITE, J.

The defendants, Norma and Daniel Ferris, were found guilty of two counts of assault in the county court for Lancaster County, Nebraska.  Each defendant was sentenced to 6 months' imprisonment on count I and to 9 months' imprisonment on count II, with sentences to be served consecutively in the county jail.  The defendants appealed to the District Court for Lancaster County, which affirmed the convictions but reduced the sentences to 1 month's imprisonment on count I and to 3 months' imprisonment on count II, to be served consecutively.  The defendants appeal to this court, assigning as error (1) that they were denied due process in an in-court voice identification procedure in the county court,

and (2) that the county court erred under Neb. Rev. Stat. § 27-901(2)(e) (Reissue 1979) by not directing the people participating in the in-court voice identification procedure to state something connected with the alleged assaults rather than the defendants' names and addresses and their status of employment. We affirm.

The victim, who is blind, was assaulted in her home where she resided alone. The record reveals that the victim had known Norma since Norma's birth, and Daniel since 1978. On May 27, 1981, the defendants went to the victim's residence, requesting a $125 loan to use as a downpayment on a car. The victim refused to loan the money. Before the defendants left, they told the victim that "We're going to have that car, one way, or another."

On May 30, 1981, the defendants returned to the victim's home and repeated their demands for the $125. The victim refused, whereupon Daniel Ferris grabbed the victim's arm and began to twist it while Norma Ferris slapped her in the face. The victim begged the defendants to stop, which they agreed to do if she would get her purse. Upon doing so, the defendants ordered her to accompany them to a used car lot. The defendants proceeded to purchase the car they wanted on the lot, with the victim providing $125 as a downpayment. The victim was then returned home. Several bruises appeared on her arm a few days later.

On June 17, 1981, the defendants again returned to the victim's home and forced their way in. The defendants knocked the victim down and repeatedly kicked her while she was on the floor. When the victim pleaded with the defendants to quit beating her, they replied: "Well, why did you call your sister, and tell her?" The victim stated that she did not call her sister, but, rather, her sister had called her. The defendants admonished her to say nothing of the incidents or she would receive more of the same

treatment, and next time "wouldn't be able to talk." Shortly after defendants had left, the victim received a telephone call from her sister inquiring if anything was wrong. She informed her sister of the beating. The sister told her to call the police immediately. The police investigated, and the defendants were charged with two counts of assault in the third degree.

At trial in the county court a voice identification was conducted due to the fact that the victim was blind. The court selected six voices, three males and three females, which included the defendants. Each male stated: "My name is Daniel Ferris. I am unemployed. I live at 418 North 27th, Lincoln, Nebraska." Each female stated: "My name is Norma Ferris. I am unemployed. I live at 418 North 27th, Lincoln, Nebraska." The victim picked out the voices of both defendants from among the other voices. The county court then announced from the bench that the victim had identified the defendants.

The defendants contend that the county court violated their due process rights by conducting an in-court voice identification which was unduly suggestive. The specific ground for the defendants' due process argument is that the people whose voices were offered in the identification process for comparison with those of the defendants were markedly different because they were better educated.

A determination as to whether identification procedures were unnecessarily suggestive and conducive to substantial likelihood of irreparable mistaken identification is to be made by consideration of the totality of the circumstances surrounding the procedures. *State v. Harris,* 205 Neb. 844, 290 N.W.2d 645 (1980).

We do not think that the admission of testimony relative to the in-court voice identification of the defendants deprived the defendants of due process of

law or in any way violated their constitutional right to a fair trial. The circumstances under which the defendants' voices were exhibited in court for identification were not unnecessarily suggestive and conducive to irreparable mistaken identification. *State v. Harris, supra.* When there is a sufficient basis established for a voice identification, there is no essential difference between requiring the defendants to speak and having them stand for purposes of identification.

There was sufficient foundation establishing the victim's familiarity with the defendants' voices. The victim knew Norma Ferris since she was born and knew Daniel Ferris for at least 3 years prior to the assaults. The victim had heard each of the defendants speak several times on the days in question. The basis for her identification was challenged on cross-examination. Under the circumstances, we find that her in-court voice identification of the defendants was admissible.

The defendants maintain that merely because other voices were offered for comparison, a lineup was held. However, all that occurred in this case was an in-court identification with additional voices offered for comparison. An in-court identification for a blind person may be conducted without any other voices, just as if the victim was sighted and the proper foundation laid. By analogy we look to previous holdings which state that an identification based upon a complaining witness' independent recollection has an origin independent of any lineups held. See *State v. Franklin,* 185 Neb. 62, 173 N.W.2d 393 (1970). It was more to the defendants' benefit that the other voices were offered for comparison at trial when it was not necessary for the court to do so.

The defendants' second assignment of error is that under § 27-901(2)(e) the county court should have directed the people participating in the in-court voice

identification procedure to say something connected with the alleged assaults rather than the defendants' names and addresses and their status of employment.

The relevant portion of § 27-901 sets forth: "(1) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. (2) *By way of illustration only, and not by way of limitation,* the following are examples of authentication or identification conforming with the requirements of this rule: . . . (e) Identification of a voice, whether heard first-hand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." (Emphasis supplied.)

We note that the plain language of § 27-901 is directory rather than mandatory. The purpose of § 27-901 is to require that "evidence [must be] sufficient to support a finding that the matter in question is what its proponent claims." Making certain that the defendants uttered the exact words used in the assaults was not critical in ensuring that the voices the victim heard when the assaults took place were those of the defendants.

Again, it may have been to the defendants' advantage to use neutral phrases rather than requiring them to repeat certain words which the victim said were used by the persons who assaulted her. This action on the part of the trial court avoided the effect of requiring the defendants to partially reenact the scene.

Finding no error, we affirm.

AFFIRMED.

McCOWN, J., participating on briefs.

CAPORALE, J., concurring.

I concur with the result in these cases but must ex-

press my perturbation at the trial judge's active participation in the prosecutorial function. It was the county *judge*, not the prosecuting attorney, who selected the persons to speak and who conducted the examination for purposes of enabling the victim to identify the defendants. Although the record does not support a finding that defendants were prejudiced by that action in this instance, we must bear in mind that justice is better served when judges remember they are adjudicators, not litigators. The proper administration of the law demands not only that judges refrain from actual bias but also that they avoid all appearance of unfairness or impropriety. See *Franks v. Franks,* 181 Neb. 710, 150 N.W.2d 252 (1967). A judge should never assume the role of prosecutor or advocate; his position is one of neutrality and he should never cross boundaries.