STATE OF NEBRASKA, APPELLEE, V. ROMONA ANGLEMYER,
ALSO KNOWN AS ROMONA WERNER, APPELLANT.
691 N.W.2d 153

Filed January 28, 2005. No. S-04-579.

Robert Wm. Chapin, Jr., of Chapin Law Offices, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.
Romona Anglemyer, the defendant-appellant, was convicted in a bench trial of one count of indecency with an animal, in violation of Neb. Rev. Stat. § 28-1010 (Reissue 1995), and she was sentenced to 90 days in jail and fined $500 plus costs. The primary issue in this case is whether sufficient foundation was provided for the admission of the videotape which depicted the alleged offense.

## FACTUAL BACKGROUND
The prosecution in this case is based on a videotape recovered from a search of Mataya's Babydolls, a club that had been

located in Lincoln, Nebraska. Because the videotape is central to the issues presented in this case, we begin with a general description of what is depicted on the videotape. The videotape was filmed in what appears to be a motel room. Three people and a male dog are seen on the videotape, and a fourth, unseen person's voice is heard, presumably from behind the camera. On the videotape, a woman, allegedly Anglemyer, engages in various types of sexual activity with the dog. Anglemyer does not contest that the activity depicted on the videotape, if the videotape is admissible, would constitute indecency with an animal, in violation of § 28-1010. Consequently, a detailed description of the sexual activity is not necessary to our analysis of the issues presented in this case.

Jeri Roeder, a detective sergeant with the Lincoln Police Department, testified that she participated in the execution of a search warrant at Mataya's Babydolls on January 3 or 4, 2003. The purpose of the search was to locate videotapes, and several VHS and 8-millimeter videotapes were found, including the 8-millimeter videotape at issue in this case, which was labeled at trial as exhibit 15. Roeder testified that she and another investigator viewed the videotapes and recognized some of the individuals depicted in exhibit 15. Roeder said that three people were seen in exhibit 15 and that the voice of a fourth, unseen person can be heard. Roeder recognized Anglemyer in exhibit 15 and made an in-court identification of Anglemyer. Roeder identified the unseen person, by voice, as being John Ways, Jr.

Roeder testified that it did not appear to her that the videotape had been altered in any way. Roeder also explained that based on her experience as a detective familiar with video cameras, a "date stamp" is imbedded on the videotape for several seconds after the camera begins recording. The date stamp on exhibit 15 indicated that it was filmed on May 27, 2002.

Roeder stated that exhibit 15 was apparently recorded in a motel room, and an imperfection on the wall of the room led her to believe that the location of the recording could be determined. Roeder also stated that in exhibit 15, the participants discussed walking over to "the club" to watch some shows and that from her past experience with Anglemyer and Ways, she knew that they were associated with Mataya's Babydolls. Based on that

information, Roeder contacted the manager of a motel located "right next" to Mataya's Babydolls.

Ketan Patel, manager of the motel, testified that he was responsible for checking people into the motel and also had trained other employees on the check-in procedure. Patel testified that a customer checking into the motel was required, in the regular course of business, to present positive identification and to pay at check-in. Patel also testified that he inspected rooms after any reports of damage, so he was familiar with the individual guest rooms at the motel.

Patel testified that in January 2003, he cooperated with a Lincoln Police Department investigation looking for a particular motel room. The police were seeking a room with two beds on the left side of the room and a defect on the wall. Based on that description, Patel was able to identify room No. 123 at the motel as the room described. Patel also testified that he had reviewed the first few seconds of exhibit 16 and recognized the color of the motel's bedspreads and the motel's "strip on the headboard." Patel was able to identify room No. 123 on the basis of the layout and the unique defect in the wall. According to Patel, the wall was damaged in late 2001 or early 2002 and was not repaired until February or March 2003.

Patel also produced the motel's "Guest Folio print out" for May 25 and 26, 2002, which Patel explained would list guests who checked out of the motel on May 27. Patel testified that according to that record, Paul Beck of Wichita, Kansas, was the guest in room No. 123 on May 27. Patel stated that no other guest stayed in room No. 123 until another person, whose identity is not relevant to the investigation, checked in on May 29 and out on May 30. Roeder testified that after receiving this information, she contacted the Wichita Police Department, which provided photographs of Beck and Glenda Yancey Beck, whom Roeder was able to identify as the other two people on exhibit 15. Roeder went to Wichita to make contact with the Becks. Roeder testified that when she arrived at their address, she saw and recognized the dog from exhibit 15.

At trial, Roeder testified that exhibit 16, a VHS videotape, was a copy made of exhibit 15. Roeder testified that it was an accurate copy of exhibit 15 from the beginning to the "end of the part

involving an animal." Roeder explained that exhibit 15 continued with people involved that are not included on exhibit 16. The State explained that the purpose of exhibit 16 was to provide a copy that could be played on the audiovisual equipment available at the courthouse.

As previously stated, Anglemyer was convicted of indecency with an animal, was sentenced to 90 days in jail, and was fined $500 plus costs. At sentencing, the trial court noted that "Ways figures very prominently in the events that bring . . . Anglemyer before this Court." The court noted the probation officer's characterization of Ways as the "provocateur" of the offense. But the trial court also stated, "Ways is not on trial here . . . Ways' character is not a factor here. And more importantly . . . Anglemyer's friendship, and or romantic involvement if there was any or general association with . . . Ways is simply not important to me, it is not a factor here." The trial court did explain, however, that the evidence persuaded it that Anglemyer was engaged in a broader commercial enterprise with Ways. The court rejected Anglemyer's testimony that she was embarrassed by her participation in the videotape and concluded, based upon materials in the presentence investigation report, that Anglemyer was part of a larger venture for the production of bestiality. The court based its sentence on its conclusion that "[t]his is not an isolated incident, and I don't think the citizens of this community want that happening here." The court sentenced Anglemyer as previously stated, and the judgment was affirmed by the district court on appeal.

## ASSIGNMENTS OF ERROR

Anglemyer assigns that the district court erred in not finding that the county court erred by (1) admitting exhibits 15 and 16 and (2) sentencing Anglemyer based on her association with Ways and making findings of fact about Anglemyer that were "not supported by the facts in the PreSentence Report of [sic] the evidence presented at trial."

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the

rules make such discretion a factor in determining admissibility. *State v. Aguilar*, 268 Neb. 411, 683 N.W.2d 349 (2004).

 Whether there is sufficient foundation evidence for the admission of physical evidence must necessarily be determined on a case-by-case basis. *State v. Mather*, 264 Neb. 182, 646 N.W.2d 605 (2002). A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion. *Id.* Cf. *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992) (admission or exclusion of photographs under Neb. Evid. R. 901 within discretion of trial court).

 A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Banes*, 268 Neb. 805, 688 N.W.2d 594 (2004).

 A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Fields*, 268 Neb. 850, 688 N.W.2d 878 (2004).

## ANALYSIS

### FOUNDATION FOR VIDEOTAPES

Anglemyer's primary argument on appeal is that the State did not present adequate foundation for the admission of exhibits 15 and 16. Anglemyer argues that the videotapes should not have been admitted without the testimony of a witness who actually saw the events depicted and could testify that the videotapes accurately represented what the witness saw. Since Roeder had no personal knowledge of the events shown on the videotapes, Anglemyer argues that Roeder was unable to provide the necessary foundational testimony.

Anglemyer's argument implicates the requirements of rule 901, which rule provides, in relevant part:

(1) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(2) By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(a) Testimony that a matter is what it is claimed to be;

. . . .

(d) Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances;

. . . .

(i) Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result . . . .

The plain language of rule 901 is directory rather than mandatory. *State v. Ferris*, 212 Neb. 835, 326 N.W.2d 185 (1982). We are also guided in our application of rule 901 by federal court decisions explaining Fed. R. Evid. 901, which is effectively identical to Nebraska's rule 901 and upon which it was based. Where a Nebraska Evidence Rule is substantially similar to a corresponding federal rule of evidence, Nebraska courts will look to federal decisions interpreting the corresponding federal rule for guidance in construing the Nebraska rule. *Breeden v. Anesthesia West*, 265 Neb. 356, 656 N.W.2d 913 (2003).

It has been said that federal rule 901 "does not erect a particularly high hurdle." *U.S. v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992). "[T]he proponent of the evidence is not required 'to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.'" *U.S. v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001). The authentication requirement does not demand that the proponent of a piece of evidence conclusively demonstrate the genuineness of his or her article, but only that he or she make a showing " 'sufficient to support a finding that the matter in question is what its proponent claims.'" *Los Angeles News Service v. CBS Broadcasting, Inc.*, 305 F.3d 924, 935 (9th Cir. 2002), *amended on other grounds on denial of rehearing* 313 F.3d 1093. See, also, *State v. Ferris, supra.* Cf. *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997).

Rule 901 incorporates two traditional models of authenticating photographic evidence: the illustrative or "pictorial testimony" model and the "silent witness" model. See, generally, 2 McCormick on Evidence § 214 (John W. Strong et al., 5th ed. 1999 & Supp. 2003). Under the illustrative model, a photograph,

motion picture, videotape, or other recording is viewed merely as a graphic portrayal of oral testimony and is admissible only when a witness testifies that it is a correct and accurate representation of facts that the witness personally observed. *Id.* See, e.g., *State v. Stephenson*, 199 Neb. 362, 258 N.W.2d 824 (1977). It is this type of foundation that Anglemyer claims is lacking in this case.

But under the "silent witness" theory of admission, photographic evidence may draw its verification not from any witness who has actually viewed the scene portrayed, but from other evidence which supports the reliability of the photographic product. 2 McCormick on Evidence, *supra.* Most commonly, such evidence has been directed at establishing the validity of the photographic process; however, other types of foundation may properly support the admission of "silent witness" evidence. See *id.* See, e.g., *U.S. v. Rembert*, 863 F.2d 1023 (D.C. Cir. 1988); *United States v. Stearns*, 550 F.2d 1167 (9th Cir. 1977); *Ex parte Weddington*, 843 So. 2d 750 (Ala. 2002); *Dept. of Safety v. Cole*, 342 Md. 12, 672 A.2d 1115 (1996); *Midland Steel v. U.A.W. Local 486*, 61 Ohio St. 3d 121, 573 N.E.2d 98 (1991); *Kindred v. State*, 524 N.E.2d 279 (Ind. 1988); *State v. Pulphus*, 465 A.2d 153 (R.I. 1983); *State v. Holderness*, 293 N.W.2d 226 (Iowa 1980); *People v. Bowley*, 59 Cal. 2d 855, 382 P.2d 591, 31 Cal. Rptr. 471 (1963); *Brooks v. Com.*, 15 Va. App. 407, 424 S.E.2d 566 (1992). Even if direct, eyewitness testimony is absent, the contents of photographic evidence itself, together with such circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate the evidence sufficiently to justify its admission. See *United States v. Stearns, supra.* As the advisory committee notes to federal rule 901 explain, "[t]he characteristics of the offered item itself, considered in the light of circumstances, afford authentication techniques in great variety." See 28 U.S.C. app. rule 901 (2000).

Based on those principles, courts have found sufficient foundation for the admission of still photographs under circumstances presenting foundation comparable to that in the instant case. For example, in *Torres v. State*, 442 N.E.2d 1021 (Ind. 1982), the defendant was convicted of child molestation based upon several Polaroid photographs that were anonymously sent to police. No

witness corroborated the events depicted in the photographs. However, the victim's mother identified her daughter, the defendant, and the defendant's girl friend in the photographs, and based on her knowledge of the defendant's apartment, the victim's mother identified the background of the photographs as the defendant's residence. Based on this foundation, the Indiana Supreme Court concluded that there was sufficient evidence to support the conclusion that the photographs accurately depicted what they were purported to depict. See *id.*

In *State v. Holderness, supra,* the victim of a burglary had left a camera containing 12-exposure film in a briefcase left in his car parked in his garage. The garage was burglarized, and the briefcase stolen. Later that day, a neighborhood child brought the victim a roll of film of the kind that had been in the camera. The victim had the film developed, and the first eight pictures were ones which the victim had taken. Another picture, however, showed an unknown man on his knees looking sideways toward the camera, holding a partially open black briefcase. The victim was unable to identify the man, but the victim was able to testify that the briefcase looked exactly like his, and he identified the objects in the background of the picture as being in his backyard. The photograph was then used to identify the defendant and convict him of the burglary. The Iowa Supreme Court concluded that the prosecution had presented sufficient evidence to support a finding that the photograph was not distorted or inaccurate and was a picture of the burglar. See *id.*

Similarly, in *People v. Doggett,* 83 Cal. App. 2d 405, 188 P.2d 792 (1948), the defendants were charged with "sex perversion" based upon photographs seized from the defendants' apartment. The landlord of the apartment building identified the persons in the photographs as the defendants and testified that the photographs accurately represented the interior of the apartment, but that he had not witnessed the defendants' conduct as depicted in the photographs. Other photographic evidence demonstrated the similarity between the furnishings in the apartment and those in the photographs of the defendants. An expert witness testified that in his opinion, the photographs were genuine and had not been faked. The California Court of Appeals held that the photographs were properly admitted.

■ The general rule, gleaned from the above cases, is that photographic evidence is admissible when it is shown that it is a correct reproduction of what it purports to depict. This is often proved by the testimony of the one who took the photograph. However, this is not necessary, and it is well settled that the showing may be made by any evidence that bears on whether the photographic evidence correctly depicts what it purports to represent. The essential element is that the photographic evidence be verified or authenticated as a genuine representation of what it purports to depict. See *People v. Doggett, supra.* This being the purpose, it is not required that an eyewitness be produced where other evidence is available to accomplish the same end. The effect and probative value of such other evidence is the important consideration, and not that the manner of making the requisite showing should be exactly the same in all cases. See *id.*

Here, it was conclusively shown by testimony that exhibit 15, with an embedded "date stamp," correctly represented and depicted the parties who occupied a certain motel room. The surroundings, furniture, and a particular imperfection on the wall of the room and other identifying features of the motel were shown to have been in part of that motel room at the time in question. There is an absence of anything which might tend to raise doubt about the matter. Under those circumstances, the verification or authentication was as satisfactory and reliable as that in the ordinary case where it depends upon the memory and integrity of a third party who may be directly interested in the result. In such a case, it can be said neither that other evidence is entirely lacking nor that proof of the requisite element was not sufficient to support the trial court's action in receiving such a videotape in evidence. Compare *People v. Doggett, supra.*

Although we did not specifically discuss rule 901, this court applied similar reasoning in *State v. Merrill,* 252 Neb. 736, 566 N.W.2d 742 (1997). In that case, police saw marijuana plants growing on the defendant's property and obtained and executed a search warrant. Police seized a photograph album from the defendant's residence, containing several Polaroid photographs of the defendant and her husband with marijuana plants, and the photographs were admitted at trial over the defendant's objection.

On appeal, we concluded that the photographs were properly admitted. We explained:

> The fact that the officers obtained possession of the album prior to [the defendant's] arrest establishes that the photographs were developed at a time pertinent to the inquiry, that is, at a time prior to when [the defendant] was charged with knowingly and intentionally possessing marijuana. The fact that [the defendant] and the marijuana could be identified establishes that the photographs accurately portrayed those subjects. Thus, the record establishes an adequate foundation for those five photographs.

*Id.* at 741-42, 566 N.W.2d at 747.

While each of these cases involved still photographs, it is well established that the same evidentiary principles apply to videotapes. See, *Dept. of Safety v. Cole*, 342 Md. 12, 672 A.2d 1115 (1996); *Midland Steel v. U.A.W. Local 486*, 61 Ohio St. 3d 121, 573 N.E.2d 98 (1991); *Kindred v. State*, 524 N.E.2d 279 (Ind. 1988); *Straughn v. State*, 876 So. 2d 492 (Ala. Crim. App. 2003); *Brooks v. Com.*, 15 Va. App. 407, 424 S.E.2d 566 (1992). In the instant case, the State presented sufficient foundation to support the finding that the videotapes depicted what they were purported to depict. Roeder's testimony, summarized above, connects the people on the videotapes with the likely time and location of the creation of the videotapes. There is no evidence to suggest that exhibit 15 or 16 was tampered with or altered, particularly given that the videotapes were in possession of Mataya's Babydolls until they were seized by police. There is no evidence from which to infer that the State deliberately tampered with the videotapes, particularly given the presumption of regularity in the handling of exhibits by public officials. See *United States v. Stearns*, 550 F.2d 1167 (9th Cir. 1977) (finding photographs accurate when they were in possession of persons in privity with defendant until seized by police).

The county court did not abuse its discretion in admitting the videotapes at issue in this case. The contents of the videotapes, together with the information obtained from the police investigation, provided "evidence sufficient to support a finding that the matter in question is what its proponent claims." See rule 901. Anglemyer's first assignment of error is without merit.

EXCESSIVE SENTENCE

Anglemyer argues that the county court imposed an excessive sentence, because "it is obvious from a reading of the Order of Sentencing that the Court focused on [Anglemyer's] relationship with . . . Ways and appears to sentence [Anglemyer] due to that relationship." Brief for appellant at 7. Anglemyer claims that "[t]he County Court Judge repeatedly indicated [Anglemyer's] relationship with . . . Ways and repeatedly referred to the things that . . . Ways did and thus, she must be doing the same things and must now receive a maximum sentence." Brief for appellant at 7-8. Anglemyer also argues that the court failed to consider mitigating factors.

An examination of the sentencing order does not support Anglemyer's argument. In considering a sentence to be imposed, the sentencing court is not limited in its discretion to any mathematically applied set of factors. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Losinger*, 268 Neb. 660, 686 N.W.2d 582 (2004). Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *Id.* A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000).

The trial court in this case appropriately considered evidence from the presentence investigation report indicating the scope of the enterprise in which Anglemyer was engaged. To the extent that the court considered Anglemyer's association with Ways, the "guilt by association" is limited to Anglemyer's association with an ongoing commercial venture to produce illegal material of the type presented in this appeal. Obviously, that consideration is neither irrelevant nor inappropriate. Our review of the

record reveals no abuse of the trial court's discretion in sentencing. Anglemyer's second and final assignment of error is without merit.

## CONCLUSION

The videotapes pursuant to which Anglemyer was convicted were sufficiently authenticated and were properly admitted into evidence. The district court also did not err in affirming the county court's sentencing of Anglemyer. Consequently, the judgment is affirmed.

AFFIRMED.