**Commonwealth v. Woffard**

C.P. of Lehigh County, No CR-3741-2013

*Jay Jenkins*, for Commonweatlh.
*Mark Merdinger*, for defendant.

STEINBERG, *J.*, January 17, 2014—The defendant, Junie Woffard, is charged with persons not to possess, use, Manufacture, Control, Sell or Transfer Firearms,[1] and Firearms Not to be Carried Without a License,[2] based on photographs which depict him in possession of a TEC-9 semi-automatic handgun.[3] The defendant contends that the photographs, which were extracted from a cell phone, are not proper "silent witness"[4] evidence, even though the

---

1. 18 Pa.C.S. § 6105(a).
2. 18 Pa.C.S. § 6106(a)(1).
3. The TEC-9 "assault pistol . . . bears the dubious distinction of being one of the most widely used criminal guns in [the] U.S.A.... TEC-9 became famous for its [] appearance, large magazine capacity [], and for low price....For any serious or professional shooter this gun [is] of little value — it was too big and heavy to be carried comfortably, it was too unreliable when firing anything but FMJ ammunition, and the accuracy with very crude fixed sights was about marginal". The TEC-9 and similar variants are banned in several states. *World Guns*, http://world.guns.ru/ handguns/hg/usa/intratec-dc-9-e.html (last visited January 6, 2014).
4. *2 McCormick on Evidence* § 215 (Kenneth S. Broun et al., 7th ed. 2013).

defendant admitted during a police interview that he was holding a real TEC-9 in the photographs. He also admitted that the photographs were taken approximately two hours before a homicide which occurred on or about August 5, 2013.

"Photographs can be admitted under two theories of relevance: as illustrative of a witness's testimony . . . and as independent substantive evidence to prove the existence of what the photo depicts (also called the 'silent witness' use of a photograph)". *2 McCormick on Evidence*, § 215; *Commonwealth v. McKellick*, 24 A.3d 982, 993 (Pa. Super. 2011)(Donohue, J., dissenting)(A video of a crime in progress may be admitted as substantive evidence of a defendant's guilt upon proper authentication). *See also State v. Freeze*, 2012 WL 6115671, slip. op. at *13 (Ohio Ct. App. 12th Dist. December 10, 2012)(photographic evidence is a silent witness which speaks for itself, and is substantive evidence of what it portrays.); *People v. Taylor*, 956 N.E.2d 431, 438 (2011)("Most jurisdictions now allow photographs and videotapes to be introduced as substantive evidence so long as a proper foundation is laid. Such evidence is generally admitted under the 'silent witness' theory."); *State v. Anglemyer*, 691 N.W.2d 153, 160 (2005)(collecting cases)(Under the silent witness theory of admission, photograph evidence may draw its verification not from any witness who has actually viewed the scene portrayed, but from other evidence which supports the reliability of the photographic content.).

A photograph to be admitted as substantive evidence, as alluded to above, must be properly authenticated by the testimony of a witness, with sufficient knowledge that the photograph is a fair and accurate depiction of

the relevant scene. *Commonwealth v. Rovinski*, 704 A.2d 1068, 1074 (Pa. Super. 1997). However, a photograph may be admissible "without calling the person who took it". *Commonwealth v. White*, 52 A.2d 360, 361 (Pa. Super. 1947).

Pa.R.E. 901(a) provides, in pertinent part, that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." One method for doing so is through the testimony of a witness with knowledge that "an item is what it is claimed to be". Pa.R.E. 901(b)(1). Various evidentiary rules regarding the authentication of photographs have also evolved including: (1) the photograph has not been altered in any significant respect; (2) the method by which the camera was activated; (3) evidence of the time interval between frames, if applicable; (4) evidence of the date the photographs were taken; (5) the chain of custody of the film after its removal from the camera; and (6) testimony of a competent witness who can explain what the photograph portrays even though he was not present when the photograph was taken. *McKellick*, 24 A.3d at 994 n. 2 (Donohue, J., dissenting); 2 McCormick on Evidence § 215, pp. 32-33; In *Anglemyer*, 691 NW.2d at 159-161, the Supreme Court of Nebraska analyzed the authentication requirements of their rule 901, which mirrors the Pennsylvania rule. They have also concluded "photographic evidence may draw its verification not from any witness who has actually viewed the scene portrayed, but from other evidence which supports the reliability of the photographic product." *Id.* at 160.

Here, the defendant authenticated the photographs. He admitted to Detective Raymond Ferraro of the Allentown Police Department the following: (1) the group photograph, which was introduced at the hearing in this matter, was taken only hours prior to the murder of Charles Bryant on August 5, 2013;[5] (2) he is holding a "real TEC-9" in the photographs;[6] (3) he was familiar with the magazine capacity and the use of a suppressor;[7] (4) the group photograph included the defendant and the homicide victim, Charles Bryant; (5) he knew all four individuals in the group photograph, and upon Detective Ferraro's request, identified each individual while Detective Ferraro wrote their names on the photograph;[8] and (6) the group photograph was taken in the 900 block of Oak Street in Allentown, the same block in which Bryant was killed hours later.[9]

The defendant's authentication claim focuses on the fact that the photographs were recovered from the cell phone of a third-party, who consented to the police extraction of the photographs.[10] This third-party was not called as a witness at the pretrial hearing, and the Commonwealth was not required to do so. *Pierce v. Unemployment Compensation Bd of Review*, 641 A.2d 727, 729 (Pa.Cmwlth. 1994) (Photographer need not be called if another witness can authenticate photos.). Detective Erik Landis extracted all the data from the cell phone using a universal forensic extraction device. A report was then generated, and eight

---

5. Notes of testimony, pre-trial motion hearing (hereinafter N.T.PTM), pp. 35, 41.
6. *Id.* at pp. 33, 36, 43.
7. *Id.*
8. *Id.* at p. 34.
9. N.T.PTM at p. 36.
10. *Id.* at p. 27.

(8) videos were discovered.[11] Stills from those videos were presented to the defendant by Detective Ferraro.

The ability to authenticate the photographs is not limited to either the owner of the cell phone or the photographer. "Anyone with personal knowledge of what a photograph depicts may authenticate it." *Bernstein*, 2012 Pa. Rules of Evidence, Comment 10(b)(1) to Pa.R.E. 901. This is not a novel theory. *Dunbar v. United States*, 15 S.Ct. 325, 329 (1895)(Defendant's admission to writing document justified its introduction in evidence. An admission as to a writing is like an admission of any other fact.). *See also Commonwealth v. Brooks*, 508 A.2d 316, 318 (Pa. Super. 1986). The defendant, while not the only person competent to authenticate these photographs, was probably in the best position to do so. He could identify: (1) the persons in the photographs, (2) his possession of a "real TEC-9", and (3) the date and time he was photographed. He was also familiar with the scene photographed and the accuracy of the photographs. His admissions authenticated the photographs.

The Commonwealth's burden for authentication is "slight." All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be. *United States v. Mebrtatu*, 2013 WL 5814139 (3d Cir. Pa. October 30, 2013). The authentication burden has also been explained in the following way:

[T]here need be only a *prima facie* showing, to the court, of authenticity, not a full argument on admissibility. Once a *prima facie* case is made, the evidence goes to

11. *See* Commonwealth's exhibit 1A and 1B.

the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.

*United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. Del. 1994) quoting *United States v. McGlory*, 968 F.2d 309, 328-329 (3d Cir. Pa. 1992); *see also Brooks*, 508 A.2d at 320. Here, the Commonwealth has met its burden of establishing the authenticity of the photographs.

The defendant in his "motion for writ of habeas corpus" alleges that his statements cannot be used to establish a *prima facie* case. Additionally, in his "motion to dismiss pursuant to state [sic] of limitations/subject matter jurisdiction", the defendant contends the Commonwealth failed to establish that the firearms not to be carried without a license offense occurred within the jurisdiction or within the statute of limitations. Specifically, it is alleged the Commonwealth did not establish when or where the video depicting the defendant holding the firearm was taken. The "silent witness" evidence, namely, the photographs, and the authentication of those photographs compels a contrary conclusion.[12]

_____

12. For the first time, the defendant, in his "Brief in Support of Supplemental Omnibus Pretrial Motion," alleges the statements made to Detective Ferraro should be suppressed because they were induced through promises of leniency. The totality of the circumstances, including any alleged inducement, must be considered in evaluating the voluntariness of a confession. *Commonwealth v. Templin*, 795 A.2d 959 (Pa. 2002). "[I]t is generally recognized that the police may use some psychological tactics in eliciting a statement from a suspect." *Miller v. Fenton*, 796 F.2d 598, 603-605 (3d Cir. 1986). The question to be answered when such tactics are used is "whether they were so manipulative or coercive that they deprived [the suspect] of his ability to make an unconstrained, autonomous decision to confess."). For example, encouraging a suspect to cooperate with the investigation and answer

For all the forgoing reasons, the "Motion for Writ of Habeas Corpus" must be denied.

## ORDER

And now, this 17th day of January, 2014, upon consideration of the defendant's omnibus pretrial motions and hearings held on November 26, 2013 and December 9, 2013; upon further consideration of the defendant's brief and caselaw submitted by counsel;

It is hereby ordered that the "Motion for Writ of Habeas Corpus" is denied.

---

questions honestly is a permissible interrogation tactic. *Commonwealth v. Nester*, 709 A.2d 879 (Pa. 1998). "The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess.... [A] court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion." *Commonwealth v. Harrell*, 65 A.3d 420, 434 (Pa. Super. 2013) quoting *Nestor*, 709 A.2d at 882; *see also Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013).

Here, the statements of the defendant were not the product of coercion. The defendant appeared voluntarily at the probation office as a witness to the homicide, not as a suspect, and the interview lasted approximately one (1) hour. Prior to being asked any questions about a firearm, Detective Ferraro properly advised the defendant of his *Miranda* rights and the defendant explicitly waived these rights and agreed to speak with Detective Ferraro. The defendant is unable to point to any of the relevant factors to suggest his statement was not voluntary and the inducement in this matter did not "choke off the legal process at the very moment which *Miranda* was designed to protect." *Templin*, 795 A.2d at 965 citing *Commonwealth v. Gibbs*, 553 A.2d 409 (Pa. 1989)(authorities are not permitted to employ inducements which impair in any way a suspect's right to his own unfettered evaluation of the need for legal counsel.). This case is distinguishable from *Gibbs* in that this defendant explicitly waived his rights *prior* to the promise made by Detective Ferraro to forgo federal prosecution if the defendant was truthful. The absence of any misstatement or misleading promise weighs in favor of a finding of voluntariness. *Templin*, 795 A.2d at 967. We note that Detective Ferraro has been true to his promise and that federal charges have not been pursued.