IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PAYNE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROBERT J. PAYNE, APPELLANT.

Filed April 16, 2024.    No. A-23-510.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Joshua D. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Robert J. Payne appeals the Lancaster County District Court's order affirming his conviction of criminal mischief after a jury trial in the county court. Payne alleges that the district court erred in affirming the county court's decision to admit certain exhibits, allow the State to recall a witness, and overrule his motion to dismiss. He also challenges the district court's decision that the State had presented sufficient evidence to support the guilty verdict. Finally, he contends that the district court erred by affirming the sentence imposed by the county court which he believes to be excessive. For the reasons set forth below, we affirm.

## II. BACKGROUND

On October 27, 2021, Payne was charged by complaint in the county court with one count of criminal mischief causing a pecuniary loss of $1,500 or more but less than $5,000, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-519(3) (Reissue 2016), and one count of criminal

- 1 -

mischief causing a pecuniary loss of $0 or more but less than $500, a Class III misdemeanor, pursuant to § 28-519(5). On the motion of the State, the Class III misdemeanor was dismissed with prejudice. A jury trial was held on August 8 and 9, 2023.

Osama Hasam was previously employed as the Director of Operations at CenterPointe Outpatient Services, a local outpatient clinic and treatment facility. Hasam testified that when he arrived to work on September 18, 2021, around 6 a.m., he observed broken windows with "[g]lass everywhere" and "a couple big rocks at the staff entry door." Glass from the staff entry door was broken, and several glass windows were scratched, broken, or shattered. After discovering the damage, Hasam contacted the Lincoln Police Department. Hasam also accessed and reviewed the surveillance video footage taken from the night prior.

Hasam explained that the surveillance system recorded at all times and that the video footage could be accessed and reviewed at any point by employees with login access. The videos contained time and date stamps that indicated when they were recorded. The State asked Hasam if he recognized a flash drive marked as exhibit 2. Hasam testified that he had personally uploaded surveillance videos from September 18, 2021, onto the flash drive and gave the drive to the police. He also placed his initials, the date, and the year onto the flash drive. Hasam confirmed that exhibit 2 contained a fair and accurate depiction of the surveillance video that he reviewed on September 18.

The State offered exhibit 2 into evidence. Payne objected based on foundation and a failure to establish chain of custody. Before making its ruling, the county court permitted Payne's counsel to ask voir dire questions of Hasam. Hasam testified that he last reviewed the surveillance videos on the flash drive approximately 3 or 4 months before trial. He testified he had no knowledge of what, if anything, had been done with the flash drive since he last reviewed it. When the voir dire examination concluded, the court sustained Payne's objections to exhibit 2.

At the State's request, a short recess was taken. During the recess, Hasam reviewed the surveillance videos contained in exhibit 2. When the recess ended and the State resumed its direct examination of Hasam, Hasam confirmed that the videos were a true and accurate depiction of the surveillance videos he originally viewed on September 18, 2021. The State then offered exhibit 2 for a second time. Payne inquired whether Hasam had any knowledge of exhibit 2's whereabouts from the time it was given to the police up until the day of trial. Hasam had no such knowledge, and Payne objected on the same grounds as before. The court sustained Payne's objections.

The State continued with its direct examination of Hasam and offered exhibit 2 into evidence three more times. Before the third attempt, Hasam testified that the videos he reviewed during the recess were the same videos he watched on September 18, 2021. He testified that no changes had been made to the videos. In each instance, Payne objected on the same grounds as iterated above, and the court sustained Payne's objections. The State eventually concluded its examination of Hasam without exhibit 2 being received.

After Payne cross-examined Hasam, the State requested that the trial be recessed and continued until the next day to "get a few things figured out" regarding laying further foundation for exhibit 2. Over Payne's objections, the court continued the trial to the next day. When the trial resumed, the State recalled Hasam outside the presence of the jury. When the court asked if there were any objections to recalling the witness, Payne stated he had no objections. The State again questioned Hasam regarding his knowledge of the video surveillance footage contained on the

flash drive. Hasam testified that the live feed from the surveillance video was running properly on September 18, 2021. After logging into the system, Hasam accessed the stored video recordings from September 18. Hasam testified that he watched the entirety of each recorded video from September 18. Hasam further testified that he reviewed the contents of exhibit 2 the day prior and that the exhibit was a true and accurate representation of the videos he reviewed on September 18. The State then asked to show the contents of exhibit 2 to Hasam. Over Payne's objections, the court received exhibit 2 for the purposes of the hearing only.

The State showed Hasam multiple video clips contained in exhibit 2 and he confirmed that these clips were from the surveillance footage he reviewed on September 18, 2021. One particular video shows a man throwing a rock at the staff entrance door and is time-stamped at 2:19 a.m. on September 18. Based on this testimony, the State asked the court to find that exhibit 2 was admissible for purposes of trial. Payne objected, arguing that the State had again failed to establish the foundation necessary to admit the exhibit and the authenticity of the videos contained in the exhibit. Payne argued that Hasam did not have sufficient knowledge to give an opinion regarding changes, additions, deletions, or modifications made to the video. Over Payne's objections, the court determined that the State had met its burden for receipt of exhibit 2. The court stated that the issue at that point was not chain of custody, but whether the recording device was in working condition and capable of recording.

The jury was brought back into the courtroom, and Hasam was called to the stand again. A similar colloquy to the one at the separate hearing occurred where Hasam testified to the contents of the surveillance videos he reviewed on September 18, 2021. The State offered exhibit 2, and over Payne's objections, the court received the exhibit. A portion of exhibit 2 was played, and Hasam explained to the jury that the video depicted a man throwing a rock at CenterPointe's staff entrance door. Hasam also testified that CenterPointe hired a contractor to repair the damaged glass. According to the testimony of CenterPointe's director of facility operations, the repairs cost $3,351.09.

Caitlin Schroder, previously employed as a scheduler and a patient service representative at CenterPointe, arrived at CenterPointe on September 18, 2021, for work. She observed the damage to the staff entrance door. Schroder testified that on the same day, CenterPointe management sent a message to its employees that the glass had been purposefully broken by an unknown individual. She testified that a picture taken from the surveillance video was attached to the message, and she identified the man in the photo as Payne.

Schroder said that she recognized Payne's face, haircut, stance, and jacket in the photo. Schroder testified that she was familiar with Payne because he would often visit CenterPointe and request to meet with the Crisis Team, specifically a team member named Alyssa. Schroder said that at the time of the damage, Payne was upset with CenterPointe for not allowing him to speak with Alyssa. When the State played exhibit 2 for Schroder, she identified Payne as the individual throwing a rock through the glass.

Officer Ceung Choi of the Lincoln Police Department was working on September 17, 2021, and had contact with Payne hours before the CenterPointe facility was damaged. The State offered Choi's body cam footage which shows Payne wearing the same clothing the individual in CenterPointe's surveillance video was wearing. Payne objected, arguing that the State failed to lay

- 3 -

proper foundation and that the video was unfairly prejudicial. The court overruled Payne's objections and received the video as exhibit 6.

At the conclusion of Choi's testimony, the State rested. Payne moved to dismiss the case, arguing that the evidence presented did not establish the identity of the person who threw rocks through the windows at CenterPointe. Payne also argued that the State failed to prove the specific amount of CenterPointe's pecuniary loss. The court overruled the motion. Thereafter, Payne rested without presenting any evidence in his defense. After closing arguments, the matter was submitted to the jury. The jury found Payne guilty of criminal mischief causing a pecuniary loss of $2,500. The court accepted the jury's verdict and scheduled a sentencing hearing.

On August 26, 2022, Payne was sentenced. Payne's criminal history was submitted and received as exhibit 7. This exhibit does not appear in our record. However, we discern from the sentencing hearing that Payne had two prior criminal mischief convictions in 2017 and 2018. He was convicted of injuring or destroying property in 2019. The court stated that Payne also had convictions for assaultive behavior and disturbing the peace and was a convicted felon.

Payne's counsel informed the court that Payne was recently diagnosed with schizophrenia. During allocution, Payne told the court that he was not in the right state of mind when he committed this crime, but he was taking responsibility for his actions.

After the evidence and arguments were submitted, the court stated that it would take into consideration counsels' comments, Payne's remarks, the exhibits received, and the statutory and case law factors that apply to sentencing. The court also considered Payne's mental health diagnosis. However, the court noted that it could not overlook the facts of the case, Payne's lengthy criminal history, or the significant pecuniary loss CenterPointe suffered due to Payne's actions. Thus, the county court sentenced Payne to 360 days' incarceration. The court gave Payne credit for time served and ordered that the sentence was to be served consecutive to any other sentence presently being served.

Payne appealed to the district court. All of the assignments of error raised in this appeal were also raised in the district court. The district court affirmed the judgment of the county court, finding that the county court properly admitted exhibits 2 and 6, that it was within the county court's discretion to allow the State to recall Hasam, that the evidence was sufficient to support Payne's convictions, and that Payne's sentence was not excessive.

Payne appeals.

### III. ASSIGNMENTS OF ERROR

Payne assigns, summarized and restated, that the district court erred by affirming the county court's decisions to (1) admit exhibits 2 and 6, (2) allow the State to recall a witness outside the presence of the jury to overcome prior evidentiary rulings regarding exhibit 2, and (3) overrule Payne's motion to dismiss. Payne also assigns that the district court erred by finding there was sufficient evidence for the jury to find him guilty. Finally, Payne assigns that his sentence is excessive, and that the district court erred in affirming the sentence imposed by the county court.

### IV. STANDARD OF REVIEW

Both the district court and a higher appellate court generally review appeals from the county court for errors appearing on the record. *State v. Dailey*, 314 Neb. 325, 990 N.W.2d 523

(2023). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* However, an appellate court independently reviews questions of law in appeals from the county court. *Id.* In an appeal of a criminal conviction, we review the evidence in a light most favorable to the prosecution. *Id.* Additional standards of review as to specific issues will be set forth in our analysis.

## V. ANALYSIS

### 1. EVIDENTIARY RULINGS

#### (a) Standard of Review

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

Because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated, and an appellate court reviews a trial court's ruling on authentication for an abuse of discretion. *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

#### (b) Exhibits 2 and 6

Payne argues that the district court erred in affirming the county court's decision to receive exhibits 2 and 6 into evidence because they lacked the proper foundation and authentication. On appeal, Payne's argument regarding exhibit 6 is simply a restatement of his assignment of error and an assertion that the county court abused its discretion by receiving the exhibit. No further argument is given. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). Therefore, we will not address this assignment of error. Our review below focuses on Payne's assignment of error with respect to exhibit 2 only.

Neb. Evid. R. 901, Neb. Rev. Stat. § 27-901 (Reissue 2016) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Authentication or identification under rule 901 is not a high hurdle. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). For example, a proponent may authenticate a document under rule 901(2)(a) by the testimony of someone with personal knowledge that it is what it is claimed to be, such as a person familiar with its contents. *State v. Casterline*, 293 Neb. 41, 878 N.W.2d 38 (2016). Additionally, under rule 901(2)(d), a proponent may authenticate a document by circumstantial evidence, or its appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances. *State v. Casterline, supra.* Authentication rulings are necessarily fact specific, so a trial court has discretion to determine whether evidence has been properly authenticated. *Id.*

The general rule is the same for photographic evidence. A photograph or a video recording is admissible when it is shown that it is a correct reproduction of what it purports to depict. See *State v. Anglemyer*, 269 Neb. 237, 691 N.W.2d 153 (2005). It is well settled that the showing may be made by any evidence that bears on whether the photographic evidence correctly depicts what it purports to represent. *Id.* The essential element is that the photographic evidence be verified or authenticated as a genuine representation of what it purports to depict. *Id.*

In this case, Hasam's testimony was sufficient to support a finding that the videos contained in exhibit 2 were what they purported to be: footage from CenterPointe's security cameras recorded on September 18, 2021. Hasam testified that on the morning of September 18, after observing the damage to the building's exterior, he reviewed these videos on CenterPointe's security system. He testified that the live feed was constantly recording and was working properly when he viewed it on September 18. The video captured by the cameras included date and time-stamps. Hasam further testified that the videos contained in exhibit 2 were the same videos he reviewed from CenterPointe's surveillance system on September 18. He denied that any alterations or modifications had been made to the videos. Hasam and a police officer were present when an IT specialist uploaded the surveillance videos onto the flash drive. Based on these facts, there was sufficient evidence to support that the videos were a genuine representation of what they purported to depict.

To the extent that Payne argues that the chain of custody regarding exhibit 2 was not established, we reject this argument as well. While the county court was initially concerned with the chain of custody, it ultimately found that the chain of custody was not a critical issue. Instead, the accuracy of the recording and its actual preservation was the ultimate question. Hasam's testimony established that an IT specialist under his supervision uploaded the videos he and a police officer had examined. He then provided that flash drive to the police. He watched the videos on exhibit 2 a few months before trial and on each day of the trial and confirmed that the videos were the same and were not modified in any way. This testimony was sufficient to establish the exhibit's authenticity. The Nebraska Supreme Court has noted that the same evidentiary principles that apply to still photographs also apply to videotapes. *State v. Anglemyer, supra.*

We hold that the district court correctly affirmed the county court's decision to admit exhibit 2.

(c) Recalling Witness

Payne asserts that the district court erred by affirming the county court's decision to allow the State to recall Hasam outside the presence of the jury to overcome prior evidentiary rulings regarding exhibit 2. We note that Payne objected to the State's request to suspend trial on the first day and grant a continuance to the next day. However, upon the resumption of trial on the second day, the court specifically asked if there were any objections to the State recalling Hasam to testify outside the presence of the jury. Payne stated he had no objection. By failing to object to Hasam's testimony on the second day, Payne failed to preserve this assignment of error on appeal. A litigant's failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023). An appellate court will not consider an argument or theory that is raised for the first time on appeal. *Id.* Thus, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit

error in resolving an issue never presented and submitted to it for disposition. *Id.* Accordingly, Payne did not preserve this error for appellate review, and we will not address it.

For the sake of completeness, we note that during Hasam's testimony outside the presence of the jury, Payne later made an objection to the State being allowed to recall Hasam, presumably before the jury. This objection was made in the context of a further foundational objection to the State's request to admit exhibit 2. While this objection may be timely as to whether Hasam should have been allowed to testify again before the jury, it was not timely as to whether Hasam should have been allowed to testify outside the presence of the jury. Payne's assignment of error specifically states that the county court erred "by allowing the State to recall a witness to testify outside the presence of the jury." His statement that he had no objection to the recall at that juncture of the proceedings precludes him from raising it on appeal.

### 2. MOTION TO DISMISS AND SUFFICIENCY OF EVIDENCE

#### (a) Standard of Review

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Tvrdy*, 315 Neb. 756, 1 N.W.3d 479 (2024).

#### (b) Discussion

Payne argues that the district court erred by affirming the county court's decision to overrule his motion to dismiss at the close of the State's case-in-chief. Payne also assigns that the evidence presented was insufficient to support his conviction of criminal mischief causing a pecuniary loss of $1,500 to $5,000. Specifically, Payne argues that exhibit 2 was incorrectly received, but that even with the exhibit in evidence, the State failed to identify him as the perpetrator. Further, Payne asserts that the evidence failed to specify the amount of pecuniary loss.

A motion to dismiss at the close of all the evidence has the same legal effect as a motion for a directed verdict. *State v. Dixon*, 306 Neb. 853, 947 N.W.2d 563 (2020). A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023). In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Id.*

A person commits criminal mischief if he damages property of another intentionally or recklessly, intentionally tampers with property of another so as to endanger person or property, or intentionally or maliciously causes another to suffer pecuniary loss by deception or threat.

§ 28-519. Criminal mischief is a Class I misdemeanor if the actor causes pecuniary loss of $1,500 or more but less than $5,000. *Id.*

As discussed above, we have already determined that exhibit 2 was properly received. There was also ample evidence identifying Payne as the individual who threw rocks at the CenterPointe building, thereby damaging its door and windows. In 2021, Schroder identified Payne in the photos that were pulled from the surveillance videos and circulated to CenterPointe's staff. At trial, when Schroder watched exhibit 2, she identified Payne as the individual throwing a rock at CenterPointe's building. In addition, Choi's September 17 body cam footage depicts Payne in the same clothing that is worn by the individual in the surveillance videos.

The evidence also established that CenterPointe paid $3,351.09 to repair its windows. The jury found that Payne caused a pecuniary loss of $2,500, but this amount still falls within the applicable pecuniary loss range. We find no error in the district court's determination that there was sufficient evidence for the county court to deny Payne's motion to dismiss and for the jury to find Payne guilty of criminal mischief causing a pecuniary loss of $1,500 or more but less than $5,000.

### 3. EXCESSIVE SENTENCE

#### (a) Standard of Review

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Tvrdy*, 315 Neb. 756, 1 N.W.3d 479 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

#### (b) Discussion

Payne assigns that the sentence imposed by the county court was excessive and that the district court erred by affirming the sentence. Specifically, he argues that there was insufficient evidence that the pecuniary loss exceeded $500, and thus, any sentence in excess of 6 months is excessive. We reject this argument.

The evidence showed that as a result of Payne's actions, CenterPointe paid $3,351.09 to repair the broken windows. The jury found that Payne caused a pecuniary loss of $2,500. Criminal mischief is a Class I misdemeanor if the actor causes pecuniary loss of $1,500 or more but less than $5,000. § 28-519. A Class I misdemeanor is punishable by not more than 1 year imprisonment, or a $1,000 fine, or both. Neb. Rev. Stat. § 28-106 (Reissue 2016). Payne's sentence of 360 days is within the applicable statutory limits. Given the evidence surrounding this offense coupled with the evidence of Payne's prior record, the county court did not impose an excessive sentence, and the district court did not err in affirming the county court's sentence.

### VI. CONCLUSION

The district court did not err in affirming Payne's conviction and sentence in the county court. Accordingly, we affirm the decision of the district court.

AFFIRMED.